THIRD DIVISION
December 23, 2009

No. 1-08-2944

MINA V. LEWIS, Individually and on Behalf of a )
Class of Persons Similarly Situated,                    )          Appeal from the
                                                                            )          Circuit Court of
    Plaintiffs-Appellants,                        )          Cook County.
                                                                            )
       v.                                                    )
                                                                            )
GIORDANO'S ENTERPRISES, INC., JOHN       )
APOSTOLOU and ALLEN AYNESSAZIAN      )          Honorable
                                                                            )          LeRoy Martin,
                                                                            )          Judge Presiding.
    Defendants-Appellees.                         )

JUSTICE QUINN delivered the opinion of the court:

This matter is before this court on interlocutory appeal pursuant to the provisions of

Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308) to consider a question certified by the trial

court. Defendant Giordano's Enterprises, Inc., which owns and operates several restaurants in

the Chicago area, has a policy of automatically deducting $0.25 per hour from its hourly

employees' wages to cover the cost of making food and beverages available to those employees

while they are working. On November 21, 2006, plaintiff, Mina V. Lewis, a former Giordano's

employee, filed a class action lawsuit in the circuit court of Cook County against Giordano's and

John Apostolou and Allen Aynessazian, the corporation's president and chief operating officer,

respectively, alleging that defendants have profited from the food deduction program in violation

1-08-2944

of the Minimum Wage Law (820 ILCS 105/1 *et seq*. (West 2004)) (Wage Law) and the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq*. (West 200)) (Wage Payment Act).[1] Defendants deny these allegations.

On February 14, 2007, plaintiff moved for class certification. The plaintiff's motion proposed two subclasses: (1) tipped employees to whom Giordano's applied Illinois' tip credit by paying them minimum wage minus the 40% tip credit and (2) nontipped employees who earned minimum wage or better. The trial court heard arguments on the motion for class certification on October 31, 2007, took the matter under advisement, and set the matter for ruling on November 14, 2007. On November 9, 2007, defendants filed an emergency motion asking the trial court to delay its ruling on class certification, stating that they had recently retained additional counsel and wanted to conduct settlement negotiations with plaintiff's counsel. Over plaintiff's objection, the court granted defendants' motion and rescheduled the ruling date for December 4, 2007. On December 3, 2007, defendants filed a second motion to delay the ruling on class certification, again citing settlement efforts, as well as various improprieties on the part of the class representative and her husband, another former Giordano's employee. The trial court granted the motion, again over plaintiff's objection, but did not schedule a new date for issuing its ruling.

---

[1] Section 3(b) of the Minimum Wage Law permits an employer to operate a food deduction program by defining "wages" to include compensation for meals "furnished by the employer" and "used by the employee." 820 ILCS 105/3(b) (West 2004). However, the amount charged must be the "reasonable cost" of providing the meals and may "not include profit to the employer." 56 Ill. Adm. Code §210.200(b) (1996).

Subsequently, plaintiffs learned from a brief that defendants filed on December 21, 2007, that defendants had obtained signed releases from more than 350 current employees and were receiving additional releases every day. The releases stated, in part, that in exchange for a payment of $10, the employee released defendants from all claims resulting from violations of the Wage Law and the Wage Payment Act as alleged in plaintiff's complaint and would indemnify defendants from and against all claims arising out of violations of those statutes. Plaintiff filed an emergency motion asking the court to enjoin defendants from continuing to obtain releases, declare void all previously obtained releases, and order defendants to notify current and former employees who signed releases that they were void as a matter of law. On December 28, 2007, the trial court granted the plaintiff's motion, in part, by enjoining defendants from obtaining additional releases. The court took the issue of the validity of the releases already obtained under advisement and allowed the parties to file additional briefs on the issue.

On January 28, 2008, the trial court issued an order stating that it should not have granted defendants' motions to delay ruling on class certification because "little or no good faith settlement negotiations took place during this time and more significantly, it appears that Defendants utilized this time to obtain hundreds of settlement releases from putative class members. It is not overtly clear that the motions to delay the ruling on class certification were brought in bad faith, but what is clear to the Court is that more effort went into obtaining these releases than went into settling the case." Therefore, the court vacated its prior orders delaying the ruling on class certification and certified the two subclasses sought by plaintiff, *nunc pro tunc* November 14, 2007. The court also held that releases dated prior to November 14, 2007, would

1-08-2944

be allowed to stand but that releases dated after that date were void.

On January 30, 2008, plaintiff filed a motion asking the trial court to reconsider or clarify its January 28 order and hold that the releases dated prior to November 14, 2007, were void in their entirety. Due to circumstances not relevant here, the trial court did not rule on that motion, and plaintiff filed a renewed motion to reconsider or clarify on July 9, 2009. After a hearing, the trial court denied plaintiff's motion and directed the parties to tender an order to the court certifying for appellate review the question of whether the releases were void as a matter of law.

The parties conferred and submitted the following question, which the trial court certified for interlocutory appeal:

> "Whether, in a class action lawsuit in which an employer, through the operation of its food credit deduction program in purported compliance with the Illinois Administrative Code Section 210.200, Title 56, regarding Meals and Lodging, is alleged to have committed certain violations of the Illinois Minimum Wage Law or the Illinois Wage Payment and Collection Act, and in which a motion for class certification has been filed but has not yet been ruled upon by the Court, and the employer obtains releases of claims under Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act from its putative class-member employees, are such releases void as a matter of law?"

Plaintiff timely filed an application for leave to appeal, which this court denied on November 26, 2008. Plaintiff then filed a petition for leave to appeal with our supreme court. On March 25, 2009, the supreme court denied plaintiff's petition for leave to appeal and entered

-4-

1-08-2944

a supervisory order directing this court to accept the interlocutory appeal, which this court did on May 11, 2009.

ANALYSIS

The question before this court, whether the Wage Law and the Wage Payment Act permit an employee to release his employer from claims arising under those statues while a motion for class certification is pending, is one of statutory interpretation and as such, will be reviewed *de novo*. Sylvester v. Industrial Comm'n, 197 Ill. 2d 225, 232 (2001). "The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." Alvarez v. Pappas, 229 Ill. 2d 217, 228 (2008), citing General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 13 (2007). "In determining legislative intent, the first step is to examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law." Alvarez, 229 Ill. 2d at 228, citing Yang v. City of Chicago, 195 Ill. 2d 96, 103 (2001). "The statutory language must be afforded its plain, ordinary, and popularly understood meaning." Alvarez, 229 Ill. 2d at 228, citing People ex rel. Sherman v. Cryns, 203 Ill 2d 264, 279 (2003). "In addition to the language chosen by the legislature, the court should consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby." People ex rel. Deptartment of Labor v. K. Reinke, Jr. & Co., 319 Ill. App. 3d 721, 726 (2001).

Plaintiff asserts that the releases signed by Giordano's employees who are putative class members are void as a matter of law under the plain language of the Wage Law and the Wage Payment Act. Specifically, plaintiff relies on section 2 of the Wage Law, which provides, in part,

1-08-2944

as follows: "It is against public policy for an employer to pay to his employees an amount less than [minimum wage as] fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void." (Emphasis added.) 820 ILCS 105/2 (West 2004).

Plaintiff also asserts that the Wage Payment Act "puts teeth" into that bar by stating:

"In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed. The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void." 820 ILCS 115/9 (West 2006).

Plaintiff contends that these provisions of the Wage Law and the Wage Payment Act prohibit employees from waiving their rights under those statutes, and because such rights cannot be waived, private settlements of putative class members' wage claims should not be permitted. Therefore, plaintiff asserts, the releases obtained by defendant should be deemed void as a matter of law.

Conversely, defendants argue that the plain language of section 2 of the Wage Law does not void contracts, agreements or understandings between employers and employees as to disputes arising under section 3(b) of the Wage Law (820 ILCS 105/3(b) (West 2004)), permitting employers to deduct from employees' wages the cost of providing food. We disagree.

This court is being asked to determine the validity of releases signed by more than 350 Giordano's employees. Among the employees who signed the releases are two distinct groups: those whose hourly wages fall below the minimum wage after $0.25 is deducted pursuant to defendants' food program and those whose wages exceed the minimum wage even after defendants deduct $0.25. The plain language of section 2 of the Wage Law declares void any agreement for or in relation to a wage that falls below minimum wage. An employee earning less than minimum wage who signs a document releasing his employer from claims under the Wage Law is entering into an agreement for or in relation to an "unreasonable and oppressive wage" and pursuant to the plain language of section 2 of the Wage Law, such an agreement is void. Therefore, with regard to those employees who signed releases and whose wages fall below the minimum wage after deducting $0.25 under the food deduction program, we answer the certified question in the affirmative and find that the releases are void as a matter of law.

Although this is a matter of first impression in this state, we note that prior to the enactment of the Wage Law, the Illinois Supreme Court twice had held that contracts to accept less than the compensation provided for by a minimum wage statute are contrary to public policy and void. In Anderson v. City of Jacksonville, 380 Ill. 44 (1942), plaintiff sued the city under the policemen's minimum wage act seeking to recover the difference between the amount of wages

he had been paid and the minimum wage provided for under the statute. The city required the employee to sign a release of all wage claims once a month at the time he was paid and argued that the releases precluded the plaintiff from bringing suit. Our supreme court, however, found that the releases were void, holding:

> "Compensation for the performance of the duties required of plaintiffs in this case cannot be made a matter for traffic, bidding or trade, and any contract to accept any other or different compensation than that provided by statute is contrary to public policy and void. [Citations]. An examination of the releases, taken as a whole series, shows their true character, *i.e.*, a continuing agreement between the city and the policemen to evade the Policemen's Minimum Wage act. The legislature has fixed the minimum wage for policemen and this court has sustained the constitutionality of that act. The will of the legislature would be nullified or completely circumvented if a scheme so obvious as this were to be approved." Anderson, 380 Ill. at 46.

Similarly, in George v. City of Danville, 383 Ill. 454 (1943), firefighters sued the city to recover the difference between the amount they were paid and the $175-per-month minimum salary provided for by the firemen's minimum wage act. The city argued that the plaintiffs should not be allowed to sue because they had sent petitions to the mayor and the city council agreeing to accept less than the minimum statutory salary for three years in order to avoid a reduction of force. Our supreme court, however, found that the firefighters' agreements to accept less than minimum statutory salaries were invalid because they violated the spirit of the

statute and were contrary to the public policy of the state. <u>George</u>, 383 Ill. at 457. Although <u>Anderson</u> and <u>George</u> do not directly address the question certified for appeal in the instant case, they lend support for our finding that pursuant to section 2 of the Wage Law, an agreement by an employee to accept less than minimum wage is void as a matter of law.

The plain language of the Wage Law does not, however, address the validity of the releases signed by employees who are receiving an hourly wage that exceeds the minimum wage after deducting $0.25 per hour. Plaintiff contends that section 9 of the Wage Payment Act provides support for the argument that releases signed by all employees, including those making more than minimum wage, are void as a matter of law. However, that section provides that an employee does not release claims under the Act by accepting a disputed paycheck and prohibits employers from requiring an employee to sign a release in order to receive payment. See 820 ILCS 115/9 (West 2006). It does not address whether, under the Wage Law or the Wage Payment Act, an employer can privately settle a wage claim with an employee earning more than minimum wage, and our research did not reveal any Illinois cases specifically addressing this issue.

When, as in this case, there is an absence of Illinois case law interpreting an Illinois wage statute, a court may look for guidance to federal cases interpreting an analogous federal statute, namely the Fair Labor Standards Act (29 U.S.C. §201 *et seq*. (2006)). See <u>Bernardi v. Village of North Pekin</u>, 135 Ill. App. 3d 589, 591 (1985) ("in the absence of Illinois decisions dealing with a particular labor law issue, Federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant"). See also 56 Ill. Adm. Code §210.120 (1996) ("For

guidance in the interpretation of the [Wage Law] and this Part, the Director [of the Illinois Department of Labor] may refer to the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S. Department of Labor, administering the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq*.)" ).  Although, as defendants assert, there are some procedural distinctions between the FLSA and the Wage Law and the Wage Payment Act, these distinctions are not grounds for ignoring federal case law given the similarity in the language and the underlying purposes and public policy of the federal and state statutes.  See Ladegaard v. Hard Rock Concrete Cutters, Inc., No. 00 C 5755, slip op. at 5 (N.D. Ill. November 9, 2001), ("[n]ot only is the language of the first paragraph of [section 2 of the Wage Law ] strikingly similar to the language found in the 'Congressional finding and declaration of policy' section of the FLSA, 29 U.S.C. §202(a) (2006), but the purpose of the Wage Law as set forth by Illinois courts is similar to that of the FLSA").  Therefore, federal cases interpreting the FLSA, while not binding on this court, are persuasive authority and can provide guidance  in interpreting issues under the Wage Law and the Wage Payment Act.

A review of federal case law shows that courts have generally held that private releases of wage claims are not permitted under the FLSA.  The United States Supreme Court first addressed the issue in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 89 L. Ed. 1296, 65 S. Ct. 895 (1945), holding that an employee who accepted a delayed payment from his employer of the basic statutory wages due under the FLSA did not release and waive his right to recover liquidated damages under the FLSA.  O'Neil, 324 U.S. at 704, 89 L. Ed. at 1307, 65 S. Ct. at 900.  The Court stated that "[w]here a private right is granted in the public interest to effectuate a

legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." O'Neil, 324 U.S. at 704, 89 L. Ed. at 1307-08, 65 S. Ct. at 901. Since neither the statutory language nor the legislative debates indicated that the issue was specifically considered by Congress, the Court turned to the legislative history of the FLSA and found "an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours, which endangered the national health and well-being and the free flow of goods in interstate commerce." O'Neil, 324 U.S. at 705-06, 89 L. Ed. at 1308-09, 65 S. Ct. at 902. Because allowing a waiver of statutory wages would nullify that purpose, the Court stated, "[w]e are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages." O'Neil, 324 U.S. at 707, 89 L. Ed. at 1308-09, 65 S. Ct. at 902.

The O'Neil Court, however, expressly left open the issue of whether a private settlement of a *bona fide* dispute is permitted under the FLSA, stating, "Our decision *** has not necessitated a determination of what limitation, if any, Section 16(b) of the [FLSA] places on the validity of agreements between an employer and employee to settle claims arising under the [FLSA] if the settlement is the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." O'Neil, 324 U.S. at 714, 89 L. Ed. at 1313, 65 S. Ct. at 905. However, a year later, in D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 90 L. Ed. 1114, 66 S. Ct. 925 (1946), the Court did address the permissibility of private settlements when there is a bona fide dispute over the coverage of the FLSA.

1-08-2944

In Gangi, the employer failed to pay employees overtime compensation under the theory that it was not covered by the FLSA. Under the threat of a lawsuit, the employer paid the overtime compensation in full and in exchange the employees signed releases of all claims under the FLSA. After reiterating the purposes of the FLSA as delineated in O'Neil, the Court stated that "[i]n a bona fide adjustment on coverage, there are the same threats to the public purposes of the Wage-Hour Act that exist when the liquidated damages are waived." Gangi, 328 U.S. at 115, 90 L. Ed. at 1119, 66 S. Ct. at 929. The Court concluded, "We think the purpose of the Act, *** leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." Gangi, 328 U.S. at 116, 90 L. Ed. at 1119, 66 S. Ct. at 929.

Subsequent Supreme Court cases and federal court decisions, relying on O'Neil and Gangi, have also held that private settlements of wage claims are not permitted under the FLSA. For instance, in Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 67 L. Ed.2d 641, 101 S. Ct. 1437 (1981), the Court stated "we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine, 450 U.S. at 740, 67 L. Ed.2d at 653, 101 S. Ct. at 1445. And in Taylor v. Progress Energy, Inc., 493 F.3d 454 (4th Cir. 2007), the Fourth Circuit Court of Appeals held that because waivers of FLSA rights and claims would nullify the congressional purpose of imposing nationwide minimum standards of employment, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." Taylor, 493 F.3d at 460.

Defendants contend, however, that federal cases holding that private settlements are not permitted under the FLSA misinterpret the holdings in O'Neil and Gangi and ignore legislation enacted after the Supreme Court issued those opinions, which, defendants assert, supports the notion that the validity of releases of wage claims should be decided on a case-by-case basis and that such releases are not void as a matter of law. Defendants argue that this court should adopt the holding of the district court in Texas, in Martinez v. Bohls Bearing Equipment Co., 361 F. Supp. 2d 608 (W.D. Tex. 2005), which held that private settlements of *bona fide* disputes of wage claims are permissible under the FLSA, and reject federal cases holding to the contrary.

In Martinez, plaintiff filed a complaint with the Texas Department of Labor alleging that his employer failed to fully pay overtime benefits. After the Texas Workforce Commission (TWC) contacted the employer regarding the complaint, the employer offered plaintiff $1,000 to compensate for the overtime owed. Although he stated that he believed he was owed nearly $3,500, plaintiff accepted the money and signed a notarized memorandum stating that the payment was a settlement of all overtime owed. A few weeks later, plaintiff filed a complaint with the TWC, alleging that he had not been fully paid for the overtime owed and that his salary had been reduced because he filed a complaint with the Department of Labor. The TWC found that the overtime issue had been resolved by the release and the $1,000 payment. Plaintiff subsequently filed a complaint in federal court raising several allegations, including alleging violations of the FLSA. Defendant filed a motion for summary judgment, which the trial court granted as to the FLSA claim, finding that the release signed by plaintiff was enforceable.

In reaching its conclusion, the court found that section 216(c) of the FLSA, which was

added in 1949, has been interpreted by some courts to permit private settlements of claims under the Act and that there is a trend toward settlements as a way of resolving wage disputes. Section 216(c) provides that the Secretary of Labor "is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." 29 U.S.C. §216 (2006).

Following the addition of section 216(c) to the FLSA, most federal courts have held that there are only two routes for compromise of FLSA claims: through a settlement supervised by the Secretary of Labor or a stipulated judgment entered by a district court after the settlement is reviewed for fairness. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982); Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) ("Section 16(c) creates the possibility of a settlement, supervised by the Secretary to prevent subversion, yet effective to keep out of court disputes that can be compromised honestly").

However, the Martinez court asserted that some courts have read the amendment broadly to permit private settlements without approval from the Department of Labor or the courts (see McCloskey & Co. v. Eckart, 164 F.2d 257 (5th Cir. 1947); United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826 (5th Cir. 1975)) and concluded, based on those cases and on the

-14-

1-08-2944

holding in Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir. 1986), that there is a "move away from the rigid interpretation of statutory rights of the 1940s to a regime which supports settlement as a favored means of resolving disputes [citation]." Martinez, 361 F. Supp. 2d at 630. In Runyan, the Sixth Circuit Court of Appeals held that a knowing and voluntary release was proper under the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §621 *et seq*. (2000)) and reversed a panel decision that relied on O'Neil and Gangi in holding that releases were not proper under the ADEA, just as they were not proper under the FLSA. Runyan, 787 F.2d at 1043. Relying on Runyan, the Martinez court held that "a compromise and release of FLSA rights involving a bona fide dispute as to liability, such as the amount of hours worked or compensation due, is not prohibited." Martinez, 361 F. Supp. 2d at 630.

Defendants assert that the holding in Martinez provides a persuasive argument that releases of wage claims are permissible under the Wage Law and the Wage Payment Act. We disagree and find defendants' reliance on Martinez misplaced. The Martinez court ignores prior federal cases, including Gangi, Barrentine, and their progeny, generally holding that private settlements of wage claims are not permitted under the FLSA and, instead, relies on a case permitting private settlements under a different statute, the ADEA. In addition, a review of the holding in Martinez reveals that the court relied almost exclusively on dissenting opinions to support its argument that there is a trend among federal courts toward allowing private settlements of bona fide wage disputes under the FLSA.

Further, even though no Illinois courts have directly addressed the issue at least two

-15-

federal district courts sitting in Illinois have held that releases of wage claims are not only void as a matter of law under the FLSA but that Illinois courts would also find such releases void under the Wage Law and the Wage Payment Act. First, Ladegaard v. Hard Rock Concrete Cutters, Inc., No. 00 C 5755 (N.D. Ill. November 9, 2001), involved wage and hour claims brought by a plaintiff pursuant to the FLSA, the Wage Law and the Wage Payment Act. Defendant raised an affirmative defense arguing that certain putative class members released their claims by signing and submitting releases that defendant sent to its employees. Ladegaard, slip op. at 1. Plaintiff filed a motion to strike the affirmative defense arguing, in part, that the releases were void because waivers of claims are prohibited under the FLSA, the Wage Law and the Wage Payment Act. Ladegaard, slip op. at 1. Defendants conceded that the releases were void as to the FLSA claims but contended that they were valid as to the Wage Law and the Wage Payment Act claims. Ladegaard, slip op. at 2.

In its opinion, the court noted the "dearth of case law either invalidating or upholding a release under either [the Wage Law or Wage Payment Act]" and looked to the FLSA and federal cases for guidance. Ladegaard, slip op. at 4. The court found that the language of the legislative policy sections of the Wage Law and the FLSA are "strikingly similar" and that "the purpose of the Wage Law as set forth by the Illinois courts is similar to that of the FLSA." Ladegaard, slip op. at 5. Further, the court noted that "like the United States Supreme Court, the Illinois Supreme Court has recognized that where the right in question is conferred for the benefit of the public at large rather than solely for the private benefit of individuals, the right in nonwaivable *** and like the United States Supreme Court's recognition in *Brooklyn Sav. Bank* [*v. O'Neil*]

that the FLSA embodies a public right, Illinois courts have recognized that both the [Wage Law] and the [Wage Payment Act] involve public rights." Ladegaard, slip op. at 6.

Based on this review, the court concluded that "the intent of the Illinois legislature as manifested in the legislative policy section of the Wage Law indicates that releases of claims under the Wage Law would frustrate its purposes." Ladegaard, slip op. at 5. The court further stated:

"[B]ased on the similar purposes of the FLSA and [Wage Law] (and [Wage Law and [Wage Payment Act])[,] the judicial recognition that these statutes involve public rights, the long history of Unites States Supreme Court interpretation of the FLSA prohibiting the release of such claims, and the Illinois common law rule that laws enacted to serve a public concern cannot be abrogated by mere private agreement, of which the legislature is presumed to be aware, see Fink v. Ryan, 174 Ill.2d 302, 673 N.E.2d 281, 285 (Ill. 1996) ('Where statues are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.') (quotation omitted), the court concludes that it would be against the public policy of the [Wage Law] and [Wage Payment Act] to permit the parties to release their claims thereunder, unless expressly allowed by these statutes. However, the express language of the [Wage Law] and [Wage Payment Act], set forth supra, if not explicit, is at least implicitly consistent with the public policy prohibiting private releases." Ladegaard, slip op. at 6.

The court rejected defendants' argument that because the FLSA expressly includes a provision, section 216(c), which permits employers and employees to settle claims with the supervision of the United States Department of Labor, and the Wage Law contains no equivalent provision, the Illinois legislature must not have intended to prohibit private settlements of claims. The court concluded that "even if the legislature did not include an equivalent provision in the Wage Law and the Wage Payment Act this does not *ipso facto* mean that the legislature meant to open the doors to all private settlements and releases. Rather, in light of the public policy behind the Wage Law and the Wage Payment Act and the strong interests in protecting the equality of bargaining positions between employer and employee, the opposite conclusion is warranted, namely, that the legislature was aware of the implications attendant in limiting the means by which parties could settle, even if limiting it only to court-approved settlements." Ladegaard, slip op. at 7. Therefore, the court found that the releases under the Wage Law and the Wage Payment Act, as well as the FLSA, were void as a matter of law. Ladegaard, slip op. at 7.

Subsequently, another district court sitting in Illinois reached the same conclusion. O'Brien v. Encotech Construction Services, Inc., 183 F. Supp. 2d 1047 (N.D. Ill. 2002), like Ladegaard, addressed whether releases obtained by defendant of claims brought pursuant to the FLSA, Wage Law, and the Wage Payment Act were void as a matter of law. Initially, the district court held that the releases were invalid with regard to the FLSA claims but that "the remainder of the releases, which are indisputably governed by Illinois law, are presumed valid because public policy 'favors the peaceful and voluntary resolution of claims.' " O'Brien v. Encotech Construction Services, Inc., 203 F.R.D. 346, 349 (N.D. Ill. 2001) quoting Gavery v. Altheimer &

1-08-2944

Gray, No. 95 C 2747, slip op. at ___ (N.D. Ill. September 11, 1996) (unpublished opinion).

Plaintiff filed a motion for reconsideration and in light of Ladegaard, the court reversed its

position and concluded that the releases obtained by the defendant were void as a matter of law

regarding both the FLSA claims and the claims arising under the Wage Law and the Wage

Payment Act. O'Brien, 183 F. Supp. 2d at 1049. Plaintiff asserts that this court should follow

the holding in Ladegaard and O'Brien and find that releases are void as a matter of law under the

Wage Law and the Wage Payment Act.

Defendants contend that Kim v. Citigroup, Inc., 368 Ill. App. 3d 298 (2006), is

controlling precedent and grounds for finding that the releases signed by all Giordano's

employees were valid. We disagree. In Kim, plaintiff was employed as a financial consultant

with defendant Citigroup. During his employment, plaintiff voluntarily signed an agreement

electing to participate in Citigroup's corporate accumulation plan (Plan), pursuant to which part

of his salary would be paid in restricted stock and would be subject to a two-year vesting period.

The agreement provided that if plaintiff left his employment voluntarily or was terminated for

cause before the stock vested, he would forfeit the stock. The plaintiff voluntarily left his

employment before all of the stock vested and then brought a class action lawsuit against

Citigroup and four other financial services companies on behalf of himself and other former

employees in Illinois who agreed to participate in similar plans. The plaintiff sought to recover

the salary that would have been paid had he not elected to participate in the Plan, asserting that

the forfeiture provision of the agreement he signed violated the Wage Payment Act. The trial

court agreed with the plaintiff and issued summary judgment in his favor. This court, however,

-19-

reversed, holding that the deduction was valid under the Wage Payment Act and that the forfeiture provision did not violate Illinois public policy. <u>Kim</u>, 368 Ill. App. 3d at 302. Defendants argue that this court should similarly find that in this case, the putative class members' decision to forfeit their claims under the Wage Law and the Wage Payment Act, by signing releases, did not violate those statues or Illinois public policy.

We find, however, that <u>Kim</u> is distinguishable from the instant case in several key respects and, therefore, is not controlling precedent regarding the question certified to this court. The employees in <u>Kim</u> were paid substantially more than minimum wage. Consequently, section 2 of the Wage Law was simply not applicable to any issue in <u>Kim</u>. Further, in <u>Kim</u>, the employer paid the employee the entire agreed-upon salary, even though some of it was paid in stock, and the plaintiff knew in advance that if he left his employment before the stock vested, he would not receive his full salary. Conversely, in this case, Giordano's employees agreed to a wage, were paid $0.25 less than the wage agreed to and then were asked afterwards to sign a release waiving their rights to the agreed-upon wage. In addition, in <u>Kim</u>, the plaintiff's participation in the restricted stock program was voluntary, while in the instant case, employee participation in the food deduction program is mandatory. Lastly, the procedural status of <u>Kim</u> is distinct in that the plaintiff in that case signed the agreement during the scope of his employment and subsequently challenged that agreement in court, while in the instant case, defendants obtained releases after a class action had been filed and while a motion for class certification was pending. Based on these distinctions, we find that <u>Kim</u> is not controlling precedent for the question certified for appeal.

With the exception of the district court in <u>Martinez</u>, all federal cases addressing the issue have held that private settlements of wage claims are not permitted under the FLSA and in the absence of Illinois case law, provide strong support for the argument that such settlements are also not permitted under the Illinois wage statutes. In addition, the opinions issued in <u>Ladegaard</u> and <u>O'Brien</u>, although not binding on this court, further support the conclusion that private settlements of claims under the Wage Law and the Wage Payment Act, in the form of releases signed by employees, are not permissible. For the forgoing reasons, we answer the certified question in the affirmative and find that the releases signed by putative class members earning less than minimum wage after deducting $0.25 under the food deduction program are void as a matter of law.

We also find that all of the releases signed by members of both putative classes are void as a matter of law because they were obtained by defendants <u>after</u> plaintiff filed her motion for class certification. Although we have long recognized that, prior to class certification, settlements with persons falling within a proposed class are not prohibited (see <u>Jankousky v. Jewel Cos.</u>, 182 Ill. App. 3d 763 (1989)), no Illinois court has addressed the narrower issue presented in this case: whether an employer can obtain a release from employees of claims brought under the Wage Law and the Wage Payment Act while a motion for class certification is pending.

In <u>Arriola v. Time Insurance Co.</u>, 323 Ill. App. 3d 138 (2001), this court considered the significance of a motion for class certification on a tendered settlement offer and found that a defendant may freely tender full recovery to putative class members before a motion for class

certification has been filed.  In <u>Arriola</u>, the defendant insurance company sought subrogation from its insureds even though their policies did not provide for subrogation.  The plaintiff filed suit and sought to represent a class consisting of all the insureds from whom the defendant had recovered such funds.  After the suit was filed but before plaintiff filed a motion to certify the class, defendant refunded payments to 44 of the 46 putative members of the class who resided in Illinois and tendered refunds to the remaining two insureds, including plaintiff, who refused the tender.  Defendant then filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)), which the trial court granted based upon a finding that plaintiff did not meet the numerosity prerequisite as defined in section 2-801 of the Illinois Code of Civil Procedure (735 ILCS 5/2-801 (West 2006)).  The insured appealed and this court reversed and remanded.  On remand, the trial court certified a question and this court granted plaintiff's application for leave to appeal.

On appeal, we held that whether a motion to certify a class has been filed is an important consideration in determining the effect a tender offer has on a class action suit, noting that "in the absence of a court order to the contrary, it is permissible for defendants to tender full amount of recovery to named plaintiffs and putative members of the class <u>prior to</u> the filing of a motion for class certification." (Emphasis added.) <u>Arriola</u>, 323 Ill. App. 3d at 150.  This court concluded, that the plaintiff was no longer a proper class representative because he could not establish that the requisite case or controversy existed after defendant tendered plaintiff's recoverable damages <u>before</u> a motion for class certification had been filed.  <u>Arriola</u>, 323 Ill. App. 3d at 151.  We stated that "when defendant tendered plaintiff's recoverable monetary damages, plaintiff's right to

proceed in this matter as a class action became moot." Arriola, 323 Ill. App. 3d at 151.

The instant case is distinct from Arriola in several key respects. First, in Arriola the plaintiff never filed a motion for class certification, while the plaintiff in this case promptly filed for class certification within three months of filing her complaint. Furthermore, in Arriola, defendant tendered full recovery to all putative class members, while the defendants in this case sought to delay the trial court's ruling on class certification and in the interim attempted to settle claims with putative class members for the nominal amount of $10, a fraction of the amount claimed to be owed by plaintiff. Therefore, unlike in Arriola, where we found that the plaintiff's class action was moot where defendant tendered full recovery to all putative class members before a motion for class certification was filed, here, defendants' offer of a nominal payment to some putative class members after plaintiff filed a motion for class certification does not preclude plaintiff from proceeding with her case.

In Arriola, this court noted that "one of the interests to be considered by courts when presented with a question concerning justiciability in a class action case is 'the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it.' " Arriola, 323 Ill. App. 3d at 152, quoting Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 331, 63 L. Ed.2d 427, 435, 100 S. Ct. 1166, 1170 (1989). "'If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification.'" Arriola, 323 Ill App. 3d at 152, quoting Susman v. Lincoln American Corp., 587 F.2d 866, 870 (7th Cir. 1978).

Similarly, in the instant case, when deciding on the validity of releases signed by putative

class members after the motion for class certification was filed, the trial court had a responsibility to protect all putative class members and the integrity of the judicial process. Arriola held that once a motion for class certification is filed, as it was in this case, a defendant may not solicit or accept releases from putative class members. Therefore, the releases obtained by defendants of all claims arising under the Wage Law and the Wage Payment Act were void as a matter of law.

Lastly, we reject defendants' assertion that prohibiting private settlements of bona fide wage disputes interferes with individuals' freedom to contract. Although Illinois has a strong principle of freedom to contract (Holstein v. Grossman, 246 Ill. App. 3d 719, 725 (1993)), this court has held that the freedom to contract is not unlimited and that contracts that are contrary to public policy will not be enforced (Holstein, 246 Ill. App. 3d at 725). The statutes at issue in this case were enacted to protect employees: the Wage Law ensures that an employee receives at least a minimum wage (820 ILCS 105/2 (West 2006)) while the Wage Payment Act "assist[s] employees in seeking redress for an employer's wrongful withholding of employee benefits." Kim, 368 Ill. App. 3d at 306. A finding that employees can waive their rights under those statutes by signing a release would be contrary to public policy, and therefore, defendants' argument that releases are valid based on a freedom to contract is without merit. The proper procedure for the defendants in the instant case to settle their claims with the plaintiffs is under the supervision of the circuit court overseeing the instant class action litigation.

## CONCLUSION

For the reasons set forth above, we answer the certified question in the affirmative.

MURPHY, P.J. and COLEMAN, J., concur.

1-08-2944