In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 10-1821, 10-1866

CLIFTON SANDIFER, *et al.*,

*Plaintiffs-Appellees/*
*Cross-Appellants*,

*v.*

UNITED STATES STEEL CORPORATION,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07-cv-00443-RLM-PRC—**Robert L. Miller, Jr.**, *Judge*.

ARGUED FEBRUARY 15, 2012—DECIDED MAY 8, 2012

Before POSNER, FLAUM, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. These appeals arise out of a class action (technically a "collective action," as it is brought pursuant to 29 U.S.C. § 216(b), a part of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*, rather than pursuant to Fed. R. Civ. P. 23) on behalf of 800 former and current hourly workers at U.S. Steel's steel

works in Gary, Indiana. The plaintiffs argue that U.S. Steel has violated the Act by failing to compensate them for the time they spend in putting on and taking off their work clothes in a locker room at the plant ("clothes-changing time") and in walking from the locker room to their work stations, and back again at the end of the day ("travel time"). The collective bargaining agreement between U.S. Steel and the steelworkers union does not require compensation for such time, and apparently none of the previous collective bargaining agreements between U.S. Steel and the union since 1947, nine years after the FLSA was enacted, required it either. But the plaintiffs argue that the Act itself requires compensation; and if it does, it overrides any contrary contractual provision. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740-41 (1981).

The district judge ruled that the Fair Labor Standards Act does not require that the clothes-changing time in this case be compensated, but that the Act may require that the travel time be compensated and he therefore refused to dismiss the suit. But he certified the issue of the compensability of the travel time for an interlocutory appeal under 28 U.S.C. § 1292(b) by U.S. Steel, and we accepted the appeal.

The plaintiffs have cross-appealed. They want to challenge the district judge's ruling that clothes-changing time is not compensable. U.S. Steel points out that the cross-appeal doesn't satisfy the procedural standard for an appeal under section 1292(b) because the plaintiffs did not ask either the district judge or us for leave to

appeal. So we hereby dismiss the cross-appeal. But the dismissal has no practical significance. For if the ruling on clothes-changing time was erroneous, the plaintiffs' case for compensation for travel time is, as we'll see, irrefutable. And so they can certainly argue, in opposition to the appeal, that the ruling was indeed erroneous.

So on to the merits—and it will simplify exposition to start with the clothing issue. The Fair Labor Standards Act requires that workers be paid at least the federal minimum wage for all hours worked, and time and a half for hours worked over 40 hours in a week. But the statute does not define "work," a critical hole that the courts must fill—critical because the Act covers an immense variety of kinds of workplace, and by expanding the meaning of "work" courts could overrule agreements negotiated between labor and management and create unforeseen retroactive liabilities. To cut back on Supreme Court decisions believed to have done this, Congress in 1947 passed the Portal-to-Portal Act, 29 U.S.C. §§ 251 *et seq.*, and two years later, in the spirit of that Act, added section 3(o) to the Fair Labor Standards Act, 29 U.S.C. § 203(o). That section excludes, from the time during which an employee is entitled to be compensated at the minimum hourly wage (or, if it is overtime work, at 150 percent of his hourly wage), "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." *Id.* ("Washing time" is not at issue in this case,

however.) The plaintiffs argue that the section is inapplicable because what the district court deemed "clothes" are not clothes within the meaning of the Act, but rather safety equipment. The statute does not define "clothes."

The alleged clothes consist of flame-retardant pants and jacket, work gloves, metatarsal boots (work boots containing steel or other strong material to protect the toes and instep), a hard hat, safety glasses, ear plugs, and a "snood" (a hood that covers the top of the head, the chin, and the neck). These work clothes are in the record, and since a picture is worth a thousand words, here is a photograph of a man modeling the clothes:



The glasses and ear plugs are not clothing in the ordinary sense but the hard hat *might* be regarded as an article of clothing, and in any event putting on the

glasses and the hard hat and putting in the ear plugs is a matter of seconds and hence not compensable, because *de minimis*. "Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); see also *Frank v. Wilson & Co.*, 172 F.2d 712, 715-16 (7th Cir. 1949); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 372-75 (4th Cir. 2011); *id.* at 376-81 (concurring opinion); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-04 (9th Cir. 2003), affirmed under the name of *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).

The rest of the outfit certainly *seems* to be clothing, but the plaintiffs argue, no, it's "personal protective equipment." Actually it's both. Protection—against sun, cold, wind, blisters, stains, insect bites, and being spotted by animals that one is hunting—is a common function of clothing, and an especially common function of work clothes worn by factory workers. It would be absurd to exclude all work clothes that have a protective function from section 203(o), and thus limit the exclusion largely to actors' costumes and waiters' and doormen's uniforms. Remember that the section covers not only clothes-changing time but also washing-up time, and workers who wear work clothes for self-protection in a dangerous or noxious work environment are far more likely to require significant time for washing up after work than a waiter.

It's true that not everything a person wears is clothing. We say that a person "wears" glasses, or a watch, or his heart on his sleeve, but this just shows that "wear" is a word of many meanings. Almost any English speaker would say that the model in our photo is wearing work clothes. Given the subject matter of the Fair *Labor* Standards Act it would be beyond odd to say that the word "clothes" in section 203(o) excludes work clothes, especially since the section is about changing into and out of clothes at the beginning and end of the workday. Not all workers wear work clothes, but workers who change at the beginning and end of the workday are changing into and out of work clothes, and if they are governed by a collective bargaining agreement that makes such changing noncompensable the agreement must apply to work clothes, for otherwise the noncompensation provision would have virtually no applications.

The fact that the clothing exclusion is operative only if it is agreed to in collective bargaining implies, moreover, that workers *are* compensated for the time they spend changing into work clothes, and washing up and changing back. "Section 203(o) permits unions and management to trade off the number of compensable hours against the wage rate; the workers get more, per hour, in exchange for agreeing to exclude some time from the base." *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 428 (7th Cir. 2010). The steelworkers would not have given up their statutory entitlement to time and a half for overtime, when changing clothes or traveling to and from their work stations, without receiving something in return; and they will get to keep that compensa-

tion until the next collective bargaining agreement goes into effect, in addition to the back pay they're demanding, if they convince us that "clothes" don't include the work clothes worn by steelworkers at the Gary plant.

From a worker's standpoint any time spent on the factory grounds is time "at work" in the sense of time away from home or some other place where he might prefer to be if he weren't at work. But it is not time during which he is making steel, and so it is not time for which the company will willingly pay. If the workers have a legal right to be paid for that time, the company will be less willing to pay them a high wage for the time during which they are making steel; it will push hard to reduce the hourly wage so that its overall labor costs do not rise. The steel industry is international and highly competitive, and unions temper their wage demands to avoid killing the goose that lays the golden eggs. They don't want the American steel industry to go where so much American manufacturing has gone in recent years—abroad. The plaintiffs are adverse to their union, to the interests of other steelworkers, and to their own long-term interests.

The plaintiffs cite language from a number of cases to the effect that "exemptions" from the Fair Labor Standards Act are to be construed narrowly. E.g., *Moreau v. Klevenhagen*, 508 U.S. 22, 33 (1993); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). We expressed skepticism in *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007), asking rhetorically: "Why should one provision in a statute take precedence over another?"

No matter; section 203(o) does not create an exemption. The Fair Labor Standards Act has a section entitled "Exemptions"; it is 29 U.S.C. § 213; the exclusion of changing time is not in that section.

This is more than a quibble. There's a difference between exclusion and exemption, or, equivalently, between scope and coverage. The FLSA does not apply to American workers abroad. Or to soldiers. Or to certain people who volunteer for particular kinds of charitable work. These exclusions help to define the scope of the Act. That scope is defined in 29 U.S.C. § 203, which is entitled "Definitions" and is where we find the provision concerning compensation for clothes-changing time, rather than in section 213, where instead we find exemptions for certain types of worker, such as certain agricultural workers. Section 203(o) creates an exclusion rather than an exemption, as all but one appellate decision to address the issue has held. See *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1138 (10th Cir. 2011); *Franklin v. Kellogg Co.*, 619 F.3d 604, 611-12 (6th Cir. 2010); *Allen v. McWane, Inc.*, 593 F.3d 449, 458 (5th Cir. 2010); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 957-58 (11th Cir. 2007).

The outlier is *Alvarez v. IBP, Inc., supra*, 339 F.3d at 905 (the affirmance of the decision by the Supreme Court was on other grounds). But as the *Anderson* decision points out, 488 F.3d at 957, the Ninth Circuit seemed to have forgotten that subsection (o) of section 203 is not found in the section of the FLSA that creates exemptions. The Ninth Circuit also thought it important

that protective clothing (the workers in question were employed in a meat-packing plant and were required to wear protective work clothes similar to those the steelworkers wear, see 339 F.3d at 898 n. 2) is "different in kind from typical clothing," which the court instanced by "warm clothing." *Id.* at 905. But this was just to say that work clothes are not street clothes. That can't be the end of the analysis. Since workers very rarely change at work from street clothes into street clothes, section 203(o) would as we said be virtually empty if the Ninth Circuit were right.

So the district judge was correct to rule that, given the terms of the collective bargaining agreement, U.S. Steel doesn't have to compensate its workers for the time they spend changing into and out of their work clothes. We add that the ruling accords with all but one reported appellate decision, and again the outlier is the Ninth Circuit's decision in *Alvarez*. See *Salazar v. Butterball, LLC, supra*, 644 F.3d at 1136-41; *Franklin v. Kellogg Co., supra*, 619 F.3d at 610-16; *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214-18 (4th Cir. 2009); *Anderson v. Cagle's, Inc., supra*, 488 F.3d 945, 955-58 (11th Cir. 2007); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n. 3 (5th Cir. 2001) (per curiam). And in *Spoerle v. Kraft Foods Global, Inc., supra*, 614 F.3d at 428, we adopted *Sepulveda*'s reasoning and conclusion without undertaking a separate analysis.

But the judge's ruling that the clothes-changing time isn't compensable makes his ruling that the company must compensate the plaintiffs for travel time puzzling and paradoxical (which is why, as we said earlier, the

plaintiffs were entitled to argue against the judge's ruling on clothes-changing time without having to cross appeal). The Portal-to-Portal Act exempts from the minimum wage and overtime provisions of the Fair Labor Standards Act "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a). Had the clothes-changing time in this case not been rendered noncompensable pursuant to section 203(o), it would have been a principal activity. But unless changing into and changing out of work clothes are principal activities even when made noncompensable pursuant to section 203(o), the exemption in section 254(a) applies, and U.S. Steel need not compensate for travel time.

The judge thought that clothes-changing time could be a "principal activity" even though the employer and the union had decided, as he agreed they were entitled to do, that changing time is not work time and need not be compensated. If it is not work time—the workers aren't being paid and their union has agreed to their not being paid—how can it be one of the "principal . . . activities which [the] employee is employed to perform"? He is required to wear work clothes, and for that matter he is required to show up for work. But he is not employed to show up or employed to change clothes. Not all requirements imposed on employees constitute employment. An employee may be required to call in when he is sick, but unless he is on paid sick leave he is not paid for the time it takes to place the call.

In *Steiner v. Mitchell,* 350 U.S. 247, 252-53 (1956), the Supreme Court held that the term "principal activity or activities" included all activities that are an "integral and indispensable part of the principal activities" for which the employee is employed, and the Court reaffirmed that ruling in *IBP, Inc. v. Alvarez*, *supra*, 546 U.S. at 37. If an employer requires his employees to don and doff work clothes at the workplace, then donning and doffing are an integral and indispensable part of the workers' main activity (in this case, making steel) and therefore a principal activity. *Steiner v. Mitchell*, *supra*, 350 U.S. at 256. *Alvarez* held that when this is the case the time the worker spends walking from the locker room to the worksite is not time walking to and from a principal activity, but instead time walking *between* principal activities, and so is not within the exemption created by the Portal-to-Portal Act, just as if the worker were a millwright who inspects, repairs, replaces, installs, adjusts, and maintains mechanical equipment in different parts of the steel mill and to do these tasks must walk from one piece of equipment to another. See *IBP, Inc. v. Alvarez*, *supra*, 546 U.S. at 37.

But the Court in *Steiner* thought it significant that there was no collective bargaining agreement that made clothes-changing time noncompensable. The Court remarked "the clear implication" of section 203(o) "that clothes changing and washing, which are *otherwise* a part of the principal activity, may be expressly excluded from coverage by agreement." *Steiner v. Mitchell, supra*, 350 U.S. at 255 (emphasis added). That is what happened in this case. Section 203(o) permits the parties to a col-

lective bargaining agreement to reclassify changing time as nonworking time, and they did so, agreeing that the workday would not start when the workers changed their clothes; it would start when they arrived at their work site. If clothes-changing time is lawfully not compensated, we can't see how it could be thought a principal employment activity, and so section 254(a) exempts the travel time in this case.

As with clothes-changing time, workers would not benefit in the long run from a rule that travel time must be compensated. It would mean that in an 8-hour shift (the hourly workers at the Gary steel works work 8-hour shifts), the employer would not obtain eight hours of productive work; he would be paying the same wage and getting less work in return (or getting the same work but paying time and half overtime for the workers' travel time), and so the wage would have to fall the next time the collective bargaining agreement was renegotiated unless the laws of economics were repealed. Employers would also be moved to limit the time they allowed their workers for travel (which would require more supervisors and cause disputes) and perhaps to reduce travel time further by moving the locker rooms closer to the work stations. These measures would spell higher costs for the employer—higher *labor* costs. The higher such costs are, the lower the hourly wage will be. And so the higher costs would be borne ultimately by the workers.

Employers could emasculate the plaintiffs' interpretation of the "primary activity" provision by placing the

locker rooms *in* the work stations, for then there would be no post-primary-activity travel time. There is something amiss with an interpretation that implies that the location of the locker room, rather than the amount of time involved in walking to one's work station, determines one's statutory entitlement to compensation. Suppose it is 100 yards from the plant entrance to the locker room and another 100 yards to the work station. On the plaintiffs' view, traversing the second 100 yards is compensable, though traversing the first 100 yards is not, but if the locker room were adjacent to the work station none of the workers' travel time would be compensable even though the amount of walking they'd be doing would be identical. What sense could that make?

It was concern with the disruption of the workplace caused by forcing employers to compensate for travel time and clothes-changing time, as the Supreme Court held they must do in *Anderson v. Mt. Clemens Pottery Co.*, *supra*, 328 U.S. at 690-92; *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers*, 325 U.S. 161, 163-64 (1945); and *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), that drove the enactment of sections 203(o) and 254(a). *IBP, Inc. v. Alvarez*, *supra*, 546 U.S. at 25-26; *Sepulveda v. Allen Family Foods, Inc.*, *supra*, 591 F.3d at 217; *Anderson v. Cagle's, Inc.*, *supra*, 488 F.3d at 957-58; *Adams v. United States*, 471 F.3d 1321, 1324-25 (Fed. Cir. 2006); *Thomas v. Howard University Hospital*, 39 F.3d 370, 371-72 (D.C. Cir. 1994). "The FLSA . . . does not define the terms 'work' or 'workweek.' The Supreme Court defined these terms 'broadly' in its early FLSA cases . . . defined them so broadly, in fact, that Congress found it necessary

to amend the statute to restore some sanctity to private employment contracts." *Sepulveda v. Allen Family Foods, Inc.*, *supra*, 591 F.3d at 217.

This history provides guidance to the meaning of "clothes" and "principal activity" by showing that Congress was trying to eliminate the disruptions that the Court's interpretation of the Fair Labor Standards Act had caused, and to allow the determination of what is compensable work in borderline cases (is changing into work clothes "work"? is walking from a locker room to a work station "work"?) to be settled by negotiation between labor and management. As the preamble to the Portal-to-Portal Act states, rather dramatically,

> The Congress finds that the Fair Labor Standards Act of 1938 . . . has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous

uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; [and] (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created….

29 U.S.C. § 251(a).

Only one previous appellate case has decided whether noncompensable changing time can be work time for purposes of the travel-time exemption. In *Franklin v. Kellogg Co.*, 619 F.3d 604, 618-19 (6th Cir. 2010), as in this case, the employer, invoking section 203(o), did not pay its workers for time spent changing into work clothes. The court concluded nevertheless that changing time, because required by the employer, was a "principal activity." This seems clearly wrong, for the reasons we've explained (and the *Franklin* opinion offers only a conclusion, not reasons). But because by disagreeing with *Franklin* we would create an inter-

circuit conflict, we have circulated this opinion to the full court in advance of publication. 7th Cir. R. 40(e). None of the judges in regular active service voted to hear the case en banc. (Judge Williams did not participate in the Rule 40(e) consideration of the matter.)

The Department of Labor has participated as an amicus curiae in this appeal on the side of the plaintiffs, and we end by considering what weight we should give its views. During the Clinton Administration the Department took a narrow view of the meaning of the term "clothes" for purposes of determining whether time spent in changing in and out of work clothes could be excluded under section 203(o) from the FLSA's minimum wage and overtime provisions. See U.S. Dep't of Labor, Opinion Letter, 2001 WL 58864 (Jan. 15, 2001); Opinion Letter, 1997 WL 998048 (Dec. 3, 1997). During the Bush Administration the Department took a broad view—broader than we take—of what "clothes" means in the FLSA, and added that clothes-changing time excluded under section 203(o) could not be a "principal activity" under the Portal-to-Portal Act. U.S. Dep't of Labor, Opinion Letter, 2007 WL 2066454 (May 14, 2007); Opinion Letter, 2002 WL 33941766 (June 6, 2002). After the change in administrations in 2009 the Department reverted to the Clinton Administration's position on "changing clothes" and also rejected the Bush Administration's position on "principal activity." U.S. Dep't of Labor, Administrator's Interpretation No. 2010-2, 2010 WL 2468195 (June 16, 2010). Such oscillation is a normal phenomenon of American politics. Democrats are friendlier to unions than Republicans are, though we

cannot see how a decision in favor of the plaintiffs in this case would help unions. (No union is a party to this case or an amicus curiae.)

Naturally the Department of Labor does not acknowledge that its motive in switching sides was political; that would be a crass admission in a brief or in oral argument, and unlikely to carry weight with the judges. The Department says instead that it is right as a matter of law and that the position the Department took in the Bush years is wrong; it adds that since it enforces the Fair Labor Standards Act its (current) position should carry weight with us. But all the Department does to demonstrate the "rightness" of its current position is to echo the plaintiffs' arguments. Nowhere in the Department's brief is there a reference to any institutional knowledge of labor markets possessed by the Department's staff—or to anything indeed to which the parties might not have complete access—that might help the court to decide the case sensibly; and at the oral argument the Department's lawyer acknowledged this void. All that the Department has contributed to our deliberations, therefore, though it is not quite nothing, is letting us know that it disagrees with the position taken by the Bush Department of Labor; for if it were silent, from which one might infer that it agreed with that position, it would be inviting U.S. Steel to argue that the Department of Labor had been consistent, at least since 2001, and thus across Administrations controlled by opposite political parties, in rejecting the plaintiffs' position.

It would be a considerable paradox if before 2001 the plaintiffs would win because the President was a Democrat, between 2001 and 2009 the defendant would win because the President was a Republican, and in 2012 the plaintiffs would win because the President is again a Democrat. That would make a travesty of the principle of deference to interpretations of statutes by the agencies responsible for enforcing them, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987), since that principle is based on a belief either that agencies have useful knowledge that can aid a court or that they are delegates of Congress charged with interpreting and applying their organic statutes consistently with legislative purpose. We are not surprised to discover that courts of appeals that have reached varied conclusions on the issues presented by this appeal have come together in spurning, as Judge Wilkinson has put it, "the gyrating agency letters on the subject." *Sepulveda v. Allen Family Foods, Inc., supra*, 591 F.3d at 216 n. 3; see also *Salazar v. Butterball, LLC, supra*, 644 F.3d at 1139; *Franklin v. Kellogg Co., supra*, 619 F.3d at 612-14; *Alvarez v. IBP, Inc., supra*, 339 F.3d at 905 n. 9; contra, *Anderson v. Cagle's, Inc., supra*, 488 F.3d at 956-57.

We resolve the specific issue that we have been asked to resolve in this interlocutory appeal in favor of U.S. Steel. On the basis of that resolution, the suit has no merit and should be dismissed by the district court.