In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3306

RYAN DEKEYSER, *et al.*, on behalf of
themselves and all others similarly
situated,

*Plaintiff-Appellants*,

*v.*

THYSSENKRUPP WAUPACA, INC., d/b/a
Waupaca Foundry, Inc.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 08-C-488 — **William C. Griesbach**, *Judge.*

ARGUED APRIL 25, 2013 — DECIDED OCTOBER 30, 2013

Before MANION and KANNE, *Circuit Judges* and LEE, *District Judge*[*].

[*] The Honorable John Z. Lee, District Judge for the United States District Court for the Northern District of Illinois, sitting by designation.

LEE, District Judge. Ryan DeKeyser, Thomas Cooper, Harley Granius, and Carlos Lantz sued their employer, Thyssenkrupp Waupaca, Inc. ("Waupaca"), an iron casting manufacturer, alleging that Waupaca violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, by not paying them overtime compensation for time they spent showering and changing clothes at Waupaca's foundries. They represent a class (an "opt-in" class under 29 U.S.C. § 216(b)) of more than four hundred Waupaca foundry workers.

The district court granted summary judgment in favor of Waupaca, ruling that showering and changing clothes at Waupaca was not compensable under the FLSA because the Occupational Safety and Health Administration ("OSHA"), the administrative agency within the Department of Labor responsible for promulgating and enforcing occupational safety and health standards, had not mandated that workers in foundries like Waupaca's shower and change clothes on-site. The district court so ruled despite the fact that there was a factual dispute in this case as to whether these activities significantly reduced workers' health risks at Waupaca. Because OSHA's decision not to promulgate a rule requiring such activities does not bar a party from presenting evidence as to the compensability of such activities under the FLSA and factual disputes otherwise preclude summary judgment, we reverse the district court's grant of summary judgment and remand for further proceedings.

## BACKGROUND

Waupaca manufactures iron castings used in the automotive and other industries. For safety, Waupaca provides certain

employees in its six foundries with personal protective equipment ("PPE"), including hard hats, safety glasses, ear protection, steel-toed footwear, and 100% cotton clothing or a fire-retardant uniform. Waupaca requires these employees to wear PPE while working, and failure to comply with Waupaca's safety standards can result in discipline. Waupaca also provides employees with locker rooms equipped with showers.

Typically, when foundry workers finish their shift making iron castings, they first clock out and proceed to Waupaca locker rooms, where they remove their uniforms and PPE, shower, and change into street clothes. Waupaca trains its employees about the hazards of the Waupaca work environ-ment, including those associated with certain chemicals and dust to which some workers are exposed, and recommends that employees shower and remove their uniforms and PPE on-site. However, not all employees do so; some leave the foundry wearing their uniforms.

Plaintiffs argue that Waupaca must pay them overtime compensation for time spent showering and changing clothes at the foundry because these activities constitute compensable work under the FLSA. For its part, Waupaca moved for summary judgment, and the district court ruled in its favor. Plaintiffs appealed.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*, taking the facts and all reasonable inferences in Plaintiffs' favor. *See Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012). Summary judgment is warranted when

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In 1938, Congress enacted the FLSA to provide employees "[a] fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal citation omitted). The FLSA's two core provisions—the minimum wage provision and the overtime provision— require that employees receive a minimum wage for each hour that they are "employ[ed]" as well as a premium wage (one and one-half times the regular rate of pay) for each hour they are "employ[ed]" beyond forty hours in one work week. 29 U.S.C. §§ 206(a), 207(a). The FLSA defines the term "employ" as "to suffer or permit to work," *id.* § 203(g), but the Act does not define "work," leaving a "critical hole that courts must fill." *Sandifer v. United States Steel Corp.*, 678 F.3d 590, 592 (7th Cir. 2012), *cert. granted*, 133 S. Ct. 1240 (2013).

Here, citing Department of Labor regulations and authority from our sister circuits, the district court held that an employee's activity constitutes compensable "work" under the FLSA if such activities are required by law, by the employer, or by the "nature of the work."[1]

---

[1] In arriving at this tripartite test, the district court relied upon *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004). Although we have had occasion to address whether certain activities constitute compensable "work" under the FLSA, we have not explicitly adopted the test espoused by the Ninth Circuit. *See, e.g.*, *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 174-75 (7th Cir. 2011) (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir. 1976) and 29 C.F.R. § 790.8(c)); *Musch v. Domtar Indus., Inc.*, 587 F.3d

(continued...)

Applying the test to the facts of the case, the district court concluded that the appellants did not satisfy the first two elements, holding that neither the law nor Waupaca required employees to shower and change clothes on-site[2]. As for the third element, the district court held that whether the "nature of the work" required such on-site activities was "not a question that either a court or a jury is well-equipped to answer." Recognizing the burdensome nature of discovery related to the health impacts of hazardous materials exposure and the difficulty of attributing any negative health impacts to an employee's failure to shower and change clothes at work—as compared to health impacts due to ordinary exposure over the course of a typical workday—the district court concluded that "the process of litigation is poorly suited to

---

[1] (...continued)

857, 859-61 (7th Cir. 2009); *Pirant v. United States Postal Serv.*, 542 F.3d 202, 208-09 (7th Cir. 2008).  Because the parties do not challenge the district court's use of this test on appeal, we need not decide that issue here.

[2]  Plaintiffs argue that the district court erred in concluding that the employees were not required to shower and change clothes on-site. Although Plaintiffs acknowledge that Waupaca did not have a policy expressly mandating such activities, Plaintiffs contend that the training and instructions Waupaca provided about the hazards of the work environment pressured employees into believing that such activities were required. Plaintiffs, however, have presented no training or instructional materials that mandated – as opposed to simply recommended – that the employees shower and change clothes on-site, and many of them left the foundry at the end of their shift without doing so.  Plaintiffs also have offered no evidence that any Waupaca employees were disciplined for not showering and changing clothes before they left the workplace, even when pressed to do so at oral argument.  Thus, the district court's finding was not erroneous.

determining the practices and procedures that should be mandated to protect worker health and safety in the workplace on an industry-wide basis."

Instead, the district court held that Congress, in enacting the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*, intended OSHA to make such determinations through the regulatory process. Accordingly, the district court concluded that "the fact that OSHA has promulgated a standard for [hazardous material] exposure that does not mandate changing clothes and showering after work requires the conclusion that such activities are not required by the nature of the work." The district court reached this conclusion despite what it would later characterize as a "sharp dispute" in the evidence as to whether changing clothes and showering actually reduced the health risks at Waupaca. *See DeKeyser v. Thyssenkrupp Waucapa, Inc.*, Case No. 08–C–488, 2012 WL 3880886, at *4 (E.D. Wis. Sept. 6, 2012.) This was error.

First, we cannot, as the district court did, draw any negative inferences from the absence of an OSHA standard requiring Waupaca foundry workers to shower and change clothes on-site. In *Illinois Power Co. v. OSHA Review Commission*, OSHA issued a citation and notification of penalty to an employer after an employee was electrocuted and killed while working on uncovered secondary voltage power lines. 632 F.2d 25, 26 (7th Cir. 1980). OSHA had not prescribed covering secondary voltage lines, and the employer argued that this precluded the citation and penalty. *Id.* at 27–29. We held that "we are not entitled to draw, as the [employer] suggests we should, any negative inference from the absence of any OSHA standard for secondary voltages." *Id.* at 29 (citing *Nat'l Realty & Constr. Co.,*

*Inc., v. Occupational Safety & Health Review Comm'n*, 489 F.2d
1257, 1261 (D.C. Cir. 1973)).

Second, courts cannot ignore, as the district court did here,
factual evidence and expert testimony offered by the parties to
establish the compensability of an activity under the FLSA.
Such evidence is frequently offered and considered in such
cases. For example, in *Musch v. Domtar Indus., Inc.*, paper mill
employees brought FLSA overtime compensation claims
against their employer for time they spent showering and
changing clothes at the mill after their work shifts. 587 F.3d at
858. There, we recognized that the parties had offered testi-
mony regarding the health impacts of exposure to certain
chemicals in the mill and considered the evidence when
determining the compensability of the activities under the
FLSA. *Id*. at 860–61.

Finally, although we recognize that cases such as this may
implicate very difficult and complex scientific issues (on which
the parties, and their retained scientific experts, will often
disagree), courts cannot avoid discovery or expert testimony
simply because such discovery or testimony may be costly,
time consuming, or difficult to understand. *See United States v.
Hall*, 93 F.3d 1337, 1342–43 (7th Cir. 1996) (scientific evidence
can pose "difficulties" for courts, but courts must assess it
"whether it is hard to do or not"); *United States v. Raszkiewicz*,
169 F.3d 459, 465–66 (7th Cir. 1999) ("The particular question
posed here … is a hard one. This does not give us an excuse to
dodge the issue."). Thus, the district court erred when it
ignored the "sharp dispute" in the evidence as to the health
effects of chemical exposure at Waupaca's foundries and the
impact, if any, that showering and changing clothes would

have on Waupaca workers and granted summary judgment in the face of such factual disputes.

## CONCLUSION

For these reasons, we find that the district court erred in granting summary judgment in Waupaca's favor. We remand this case for proceedings consistent with this opinion.

MANION, *Circuit Judge,* dissenting.

I conclude that the district court did not err in granting summary judgment in favor of the defendant, and for the following reasons I respectfully dissent. Last year we decided *Sandifer v. U.S. Steel Corp.,* 678 F.3d 590 (7th Cir. 2012), *cert. granted in part,* 133 S. Ct. 1240 (2013), where we held that clothes-changing time was not compensable under the Fair Labor Standards Act (FLSA) because the collective bargaining agreement entered into by the union and the steelworkers in that case precluded compensation for those activities. *Id.* at 591–92. Since there was an agreement between the union and the covered U.S. Steel employees, there was no rule or regulation affecting those activities. In the absence of a rule or regulation, it was not necessary to reach the question of what test a district court should apply to determine whether donning, doffing, or showering are "integral and indispensable" parts of employees' activities or merely an employee convenience. *Id.* at 596. With this question left unresolved, the district court looked to the guidance of the Ninth Circuit and, after a thorough analysis, granted summary judgment to Waupaca. I would affirm the district court's grant of summary judgment.

After extensive review and a second round of briefing, the district court first concluded that "employee activities that are in compliance with the hazard communication instructions that OSHA requires employers to give its employees are not for that reason alone compensable principal activities within the meaning of the FLSA." *DeKeyser v. Thyssenkrupp Waupaca, Inc.,* 2012 U.S. Dist. LEXIS 100193, at *5 (E.D. Wis., July 19, 2012). In other words, simply because OSHA required

Waupaca to distribute informational materials about donning, doffing, and showering to its employees, that ministerial responsibility did not automatically make the actions covered by the informational materials "principal activities" compensable under the FLSA. Looking beyond the OSHA regulations, the district court concluded "that the legal standard applicable to the disposition of this case is whether the donning, doffing, and showering activities are required by (1) law, (2) the rules of the employer, or (3) by the nature of the work." *Id*. This tripartite test is taken from *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004), and tracks 29 C.F.R. § 790.8(c) n.65 promulgated by the Secretary of Labor in 1947, the same year the Portal-to-Portal Act became law. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). After applying the tripartite *Ballaris* test, the district court concluded that "[t]he undisputed facts of the case reveal that the activities at issue do not meet this standard and thus are not 'work' under the FLSA. They therefore are not compensable." *Id.* at *5–6.

The district court made specific findings in support of its conclusion. Regarding prong one, it determined that "[p]laintiffs have not identified a statute or regulation requiring foundry workers to change and shower at the work place." *Id.* at *11. Thus, the plaintiffs' claims failed prong one of the *Ballaris* test. "Nor have they presented evidence of an employer rule or policy mandating that they do so." *Id.* And so the plaintiffs' claims failed prong two of the *Ballaris* test. Under prong three of the *Ballaris* test, the district court initially "concluded that a factual dispute over whether the nature of the work required the employees to don, doff, and shower at

work precluded entry of summary judgment."*Id.* at *20. The district court then "concluded that a trial, or at least further discovery, was needed." *Id.* at *21. Discovery was subsequently directed at the linchpin question undergirding this litigation: does the "nature of the work" at Waupaca *require* changing and showering at the work site such that these grooming activities constitute "integral and indispensable" principal activities within the meaning of the FLSA?

After failing to locate an OSHA-imposed shower mandate on foundry employees,[1] the district court turned to the evidence that the plaintiffs had assembled. Their primary sources of evidence are material safety data sheets (MSDS) Waupaca produced in discovery which list the physical characteristics and hazards of each chemical, the symptoms caused by overexposure, and any pre-existing medical conditions aggravated by exposure. *Id.* at *8. The district court reviewed these documents and concluded that they were not material to the plaintiffs' allegations because they dealt with unrelated donning, doffing, or showering practices of employees who engage in specialized work in parts of the foundry that are not at issue in this litigation. *Id.* at *9-10. Another item produced in discovery, issued as part of Waupaca's OSHA-mandated

---

[1] My colleagues cite *Illinois Power Co. v. OSHA Review Commission,* 632 F.2d 25 (7th Cir. 1980) for the proposition that we are not permitted to draw an adverse inference on agency silence. Maj. Op. at 6. However, the district court did not grant summary judgment based on agency silence, but on the absence of evidence in support of plaintiffs' claims.

HAZCOM program,[2] states, in pertinent part, the following recommendation for dealing with silica and lead dust (formally known as cupola dust):

> After working in a dusty area, practice good personal hygiene by showering and leaving your uniform at work. Cupola dust poses no hazard from skin contact, but showering at work will prevent the material from being tracked into your car or home.[3]

*Id.* at *10. Plaintiffs argue that these MSDSs and related HAZCOM memoranda prove that the "nature of the work" at Waupaca (i.e., risks from dust exposure) caused OSHA to compel employers to recommend that employees change clothes and shower, entitling them to compensation under the FLSA. Waupaca justifiably demurs. As the district court

---

[2] At oral argument, counsel for Waupaca clarified that HAZCOM is a communication standard, not a conduct standard. In other words, because Waupaca utilizes a variety of chemicals at its foundries, and because OSHA requires that Waupaca make information about those chemicals available to its employees (hence the reason Waupaca retains and makes MSDS data sheets available in the first place), OSHA also requires that the information made available be accurate. But OSHA does not require that MSDS-distributing facilities *implement* the recommendations found in MSDS data sheets.

[3] At oral argument, counsel for Waupaca represented that maintenance of the dust referenced in this MSDS is handled by the melt department and melt maintenance department, totaling 52 of the 484 plaintiffs. This "personal hygiene" recommendation is something the company offered as an optional benefit so an employee could clean up and avoid tracking the "no hazard" cupola dust into his or her car or home.

recognized, "[t]here is a difference … between requiring employers to pass on information to employees about health and safety precautions and recommendations and mandating the recommended actions." *Id.* at *29. Recommendations are not requirements and the distinction is precise and consequential.

No doubt, it would be ill-advised to ingest massive quantities of cupola dust. For that reason, Waupaca (in compliance with OSHA) encourages foundry employees to minimize their exposure. But the district court determined after years of discovery that the MSDSs produced failed to create a genuine issue of material fact over whether showering immediately after work "appreciably reduces the risk to human health that otherwise exists at foundries like Waupaca's." *Id.* at *31. Ingestion of dust, if any, occurs during eight-hour shifts working in dusty areas. Neither showers, nor compensation for voluntary showering, mitigates that situation.

The record indicates that Waupaca operates six foundries and at oral argument counsel indicated that its foundries run three shifts per day. If the FLSA compels overtime pay here, Waupaca would either have to shut its lines down earlier to squeeze these activities in under forty hours or pay overtime at time-and-a-half to the employees for the easiest parts of their work day. Plaintiffs' counsel surmised that the overtime pay of time-and-a-half would amount to about twenty minutes on each end. A judgment in the plaintiffs' favor would thus entitle 484 employees to be compensated for about forty minutes a day, five days a week, for the three years immediately preceding the complaint. Moving forward, this new standard would

apply to some yet undetermined number of employees, three shifts per day, in perpetuity until Waupaca ceases operations.

If an employee is entitled to time-and-a-half for the 20 minutes it takes to put on whatever clothing and protective equipment necessary before his shift begins, and another 20 minutes at the end of the shift to remove the clothing and take a shower, it adds an extra 40 minutes to each 8-hour day. If, for example, an employee makes $20 per hour, in an 8-hour day he would earn $160.[4] If that 40 minutes of overtime is added on at what would then be $30 per hour for that additional 40 minutes at time-and-a-half, it would be another $20 for that day. As a result, in addition to 40 hours of actual work time in the foundry, there would be an extra 200 minutes or $100 at the time-and-a-half rate for simply changing clothes and showering. Because every category of employee probably has a somewhat different pay scale (presumably based on skill, difficulty, seniority, etc.), there would have to be a significant variation in the pay scales for the 484 employees. The example of a $100 weekly increase for each of three shifts would vary depending upon the employee's base wage rate. Also, it appears that there are some fraction of the employees that are required to wear special equipment and clothing, and they appear not to be counted in this particular class.

The union in *Sandifer* did not challenge U.S. Steel's formula. As we pointed out, in *Sandifer* the FLSA permitted unions and management to trade off the number of compensable hours

---

[4]  I use $20 because it is an even number. No doubt many employees are paid less or more per hour.

against the wage rate. 678 F.3d at 594. Workers received more dollars per hour in exchange for agreeing to exclude some time from the base (which would include donning and doffing clothes and protective equipment, even if required). *Id*. Similarly, that is the only sensible solution in this case. Although there is not a union here, there certainly could be a formula for determining payment that would be added on for employees who needed or chose to don, doff, and shower. One suggestion would be adding on to the hourly wage something significantly less than the wage rate for working in the foundry itself. Perhaps something like $10 per hour for the additional 200 minutes per week could be factored in. As noted in *Sandifer*, "the workers g[o]t more, per hour, in exchange for agreeing to exclude some time from the base." *Id.*

The key distinction in this case is that there is no requirement for donning, doffing, or showering. It is totally optional. Many employees take advantage of the convenience of having a clean uniform every day and a shower after work. Others choose to go home without either. Those who choose to go home may not have a particularly dirty job that others in the foundry may have. The punitive consequence in this case is that the time-and-a-half for the donning and doffing overtime goes back three years from the date of the complaint. No doubt those who chose not to take a shower and change clothes at home may conveniently remember that they did take a shower most of the time. And certainly if this wage rate is imposed with time-and-a-half, all the employees will arrive and don on-

site, stay to doff after the shift ends, and take a shower even though it is not required.[5]

As in *Sandifer,* this kind of imposition of overtime retroactively and prospectively would have a serious economic impact on Waupaca. 678 F.3d at 594–95. If it does not put it out of business outright, it could clearly affect the job availability and would necessarily cause a reduction in wage rates per job. *Sandifer,* 678 F.3d at 597 ("The higher such costs are, the lower the hourly wage will be. And so the higher costs would be borne ultimately by the workers."). This is inevitable because Waupaca has to make a profit and any measure of profit in each division requires a wage that allows fair compensation but also a reasonable profit so that the company can stay in business and perhaps even grow and hire more people.

Finally, it is necessary to emphasize that the district court's opinion was not a reaction to OSHA's acquiescence. The plaintiffs place great weight on the recommendations from OSHA with regard to rules about certain chemicals as well as other recommendations for practices in the workplace. The district court simply reacted to those assertions and rejected the insistence that those recommendations inevitably required that the donning and doffing opportunity somehow morphed

---

[5] That could overcrowd the shower area, causing the company to shut down the whole offer for everyone except those who Waupaca specifically requires to put on special equipment. It is also pretty obvious that the problem in the foundry is not being exposed to dangerous chemicals that may spill on the employee. Rather, the building has dust and perhaps has other irritating particles in the air. A shower at the end of the day is not going to eliminate what could be a respiratory threat.

into a requirement that mandated overtime compensation. Clearly the district court recognized that this was a 24-hour operation with three 8-hour shifts. This means that in order to have a worker present at a work station for the full eight hours for each shift there would be one employee donning and another employee doffing for an additional 40 minutes at time-and-a-half. The district court correctly pointed out this is not the case where a judge or a jury should decide on how to run the workplace and how to fix the problem by mandating time-and-a-half overtime. Rather, the only sensible thing is for the employees and Waupaca management to get together and set pay scales where appropriate and in an amount that will be compensable for an 8-hour workday that recognizes the process but does not include the time it takes to don and doff work clothes. The key here is that it is not a requirement and therefore theoretically the company would have the option of just closing down the shower. Maybe that would cause some employees to quit. But paying time-and-a-half for the time it takes to don and doff is not a solution for either the employees or the foundry if the employees want to keep their jobs and the foundry wants to stay in business. Simply put, "[i]f the workers have a legal right to be paid for that time [donning, doffing, and showering], the company will be less willing to pay them a high wage for the time during which they are [working]; it will push hard to reduce the hourly wage so that its overall labor costs do not rise." *Sandifer*, 678 F.3d at 594.

In short, I think the district court correctly granted summary judgment to Waupaca. The complaint in this case was filed well over five years ago. That means that a number of employees have likely departed, including some of those

covered within the three-year back pay period. Obviously when this case is sent back to the district court on remand, that three-year back pay period from the filing of the complaint moves forward from the fixed beginning. It is understandable why the district court recognized the futility of going on for more years given the fact that the plaintiffs have already had two chances to come up with new briefs and new discovery. It is obvious the nature of the "work" of donning and doffing is substantially less arduous than the work during the 8-hour shift on the factory floor.

In remanding this case I hope the interests of justice will be served. Our decision in *Sandifer* fully examines the economic reality of imposing overtime on a 24-hour (three shifts) manufacturing operation. More tedious and expensive discovery and conflicting expert testimony and ultimately a trial should at least be preceded by a careful examination of a formula that factors into a 40-hour wage rate a recognition of the donning and doffing process that sufficiently benefits certain employees without punishing the company. I don't think any back pay is warranted given the fact that the donning and doffing was not required, and that among the 400 or so employees the non-use or the varying frequency of use of the donning and doffing process would be very difficult to ascertain with each employee or former employee. Perhaps some sort of bonus arrangement could be worked out. That said, I recognize I am the minority and although I would affirm

the judgment of the district court, I do accept the court's decision as the final word.[6]

---

[6] Two of our sister circuits have disposed of similar suits brought by individuals employed in similar professions on motions without requiring trial. *See, e.g, Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010) (for the time spent walking between the changing room and the time clock, donning and doffing the uniform and equipment was both integral and indispensable to the job … remanding for fact finding on other issues); *Gorman v. Consolidated Edison Corp.,* 488 F.3d 586, 593 (2d Cir. 2007) (donning and doffing is only "integral and indispensable" to a principal activity when the principal activity is performed in a lethal environment). *But see Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 363 (4th Cir. 2011) (donning and doffing protective gear at the beginning and end of the employees work shifts were "integral and indispensable" to chicken processing since these activities were necessary to their work on the "production line" and primarily benefitted the employer by sanitizing the employee and its clothing in order to avoid contaminating the chicken).