MANTON, Circuit Judge,
dissenting.
I conclude that the district court did not err in granting summary judgment in favor of the defendant, and for the following reasons I respectfully dissent. Last year we decided Sandifer v. U.S. Steel Corp., 678 F.3d 590 (7th Cir.2012), cert. granted in part, — U.S.-, 133 S.Ct. 1240, 185 L.Ed.2d 177 (2013), where we held that clothes-changing time was not compensa-ble under the Fair Labor Standards Act (FLSA) because the collective bargaining agreement entered into by the union and the steelworkers in that case precluded compensation for those activities. Id. at 591-92. Since there was an agreement between the union and the covered U.S. Steel employees, there was no rule or regulation affecting those activities. In the absence of a rule or regulation, it was not necessary to reach the question of what test a district court should apply to determine whether donning, doffing, or showering are “integral and indispensable” parts of employees’ activities or merely an employee convenience. Id. at 596. With this question left unresolved, the district court looked to the guidance of the Ninth Circuit and, after a thorough analysis, granted summary judgment to Waupaca. I would affirm the district court’s grant of summary judgment.
After extensive review and a second round of briefing, the district court first concluded that “employee activities that are in compliance with the hazard communication instructions that OSHA requires employers to give its employees are not for that reason alone compensable principal activities within the meaning of the FLSA.” Dekeyser v. Thyssenkrupp Waupaca, Inc., 2012 WL 2952360, at *2, 2012 U.S. Dist. LEXIS 100193, at *5 (E.D.Wis., July 19, 2012). In other words, simply because OSHA required Waupaca to distribute informational materials about donning, doffing, and showering to its employees, that ministerial responsibility did not automatically make the actions covered by the informational materials “principal activities” compensable under the FLSA. Looking beyond the OSHA regulations, the district court concluded “that the legal standard applicable to the disposition of this case is whether the donning, doffing, and showering activities are required by (1) law, (2) the rules of the employer, or (3) by the nature of the work.” Id. This tripartite test is taken from Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 910 (9th Cir.2004), and tracks 29 C.F.R. § 790.8(c) n. 65 promulgated by the Secretary of Labor in 1947, the same year the Portal-to-Portal Act became law. See IBP, Inc. v. Alvarez, 546 U.S. 21, 37, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005); Steiner v. Mitchell, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956). After applying the tripartite Ballaris test, the district court concluded that “[t]he undisputed facts of the case reveal that the activities at issue do not meet this standard and thus are not ‘work’ under the FLSA. They therefore are not compensable.” Id. at *2, 2012 U.S. Dist. LEXIS 100193 at *5-6.
The district court made specific findings in support of its conclusion. Regarding prong one, it determined that “[pjlaintiffs have not identified a statute or regulation requiring foundry workers to change and shower at the work place.” Id. at *5, 2012 U.S. Dist. LEXIS 100193 at *11. Thus, the plaintiffs’ claims failed prong one of the Ballaris test. “Nor have they presented evidence of an employer rule or *573 policy mandating that they do so.” Id. And so the plaintiffs’ claims failed prong two of the Ballaris test. Under prong three of the Ballaris test, the district court initially “concluded that a factual dispute over whether the nature of the work required the employees to don, doff, and shower at work precluded entry of summary judgment.” Id. at *7, 2012 U.S. Dist. LEXIS 100193 at *20. The district court then “concluded that a trial, or at least further discovery, was needed.” Id. at *7, 2012 U.S. Dist. LEXIS 100193 at *21. Discovery was subsequently directed at the linchpin question undergirding this litigation: does the “nature of the work” at Waupaca require changing and showering at the work site such that these grooming activities constitute “integral and indispensable” principal activities within the meaning of the FLSA?
After failing to locate an OSHA-imposed shower mandate on foundry employees,[1] the district court turned to the evidence that the plaintiffs had assembled. Their primary sources of evidence are material safety data sheets (MSDS) Waupaca produced in discovery which list the physical characteristics and hazards of each chemical, the symptoms caused by overexposure, and any pre-existing medical conditions aggravated by exposure. Id. at *3, 2012 U.S. Dist. LEXIS 100193 at *8. The district court reviewed these documents and concluded that they were not material to the plaintiffs’ allegations because they dealt with unrelated donning, doffing, or showering practices of employees who engage in specialized work in parts of the foundry that are not at issue in this litigation. Id. at *3-4, 2012 U.S. Dist. LEXIS 100193 at *9-10. Another item produced in discovery, issued as part of Waupaca’s OSHA-mandated HAZCOM program,[2] states, in pertinent part, the following recommendation for dealing with silica and lead dust (formally known as cupola dust):
After working in a dusty area, practice good personal hygiene by showering and leaving your uniform at work. Cupola dust poses no hazard from skin contact, but showering at work will prevent the material from being tracked into your car or home.[3]
Id. at *4, 2012 U.S. Dist. LEXIS 100193 at *10. Plaintiffs argue that these MSDSs and related HAZCOM memoranda prove that the “nature of the work” at Waupaca (i.a, risks from dust exposure) caused OSHA to compel employers to recommend that employees change clothes and shower, entitling them to compensation under the *574 FLSA. Waupaca justifiably demurs. As the district court recognized,"“[t]here is a difference ... between requiring employers to pass on information to employees about health and safety precautions and recommendations and mandating the recommended actions.” Id. at *10, 2012 U.S. Dist. LEXIS 100193 at *29. Recommendations are not requirements and the distinction is precise and consequential.
No doubt, it would be ill-advised to ingest massive quantities of cupola dust. For that reason, Waupaca (in compliance with OSHA) encourages foundry employees to minimize their exposure. But the district court determined after years of discovery that the MSDSs produced failed to create a genuine issue of material fact over whether showering immediately after work “appreciably reduces the risk to human health that otherwise exists at foundries like Waupaca’s.” Id. at *11, 2012 U.S. Dist. LEXIS 100193 at *31. Ingestion of dust, if any, occurs during eight-hour shifts working in dusty areas. Neither showers, nor compensation for. voluntary showering, mitigates that situation.
The record indicates that Waupaca operates six foundries and at oral argument counsel indicated that its foundries run three shifts per day. . If the FLSA compels overtime pay here, Waupaca would either have to shut its lines down earlier to squeeze these activities in under forty hours or pay overtime at time-and-a-half to the employees for the easiest parts of their work day. Plaintiffs’ counsel surmised that the overtime pay of time-and-a-half would amount to about twenty minutes on each end. A judgment in the plaintiffs’ favor would thus entitle 484 employees to be compensated for about forty minutes a day, five days a week, for the three years immediately preceding the complaint. Moving forward, this new standard would apply to some yet undetermined number of employees, three shifts per day, in perpetuity until Waupaca ceases operations. •
If an employee is entitled to time-and-a-half for the 20 minutes it takes to put on whatever clothing and protective equipment necessary before his shift begins, and another 20 minutes at the end of the shift to remove the clothing and take a shower, it adds an extra 40 minutes to each 8-hour day. If, for example, an employee makes $20 per hour, in an 8-hour day he would earn $160.[4] If that 40 minutes of overtime is added on at what would then be $30 per hour for that additional 40 minutes at time-and-a-half, it would be another $20 for that day. As a result, in addition to 40 hours of actual work time in the foundry, there would be an extra 200 minutes or $100 at the time-and-a-half rate for simply changing clothes and showering. Because every category of employee probably has' a somewhat different pay scale (presumably based on skill, difficulty, seniority, etc.), there would have to be a significant variation in the pay scales for the 484 employees. The example of a $100 weekly increase for each of three shifts would vary depending upon the employee’s base wage rate. Also, it appears that there are some fraction of the employees that are required to wear special equipment and ..clothing, and they appear not to be counted in this particular class.
The union in Sandifer did not challenge U.S. Steel’s formula. As we pointed out, in Sandifer the FLSA permitted unions and management to trade off the number of compensable hours against the wage rate. 678 F.3d at 594. Workers received more dollars per hour in exchange for *575 agreeing to exclude some time from the base (which' would include donning and doffing clothes and protective equipment, even if required). Id. Similarly, that is the only sensible solution in this case. Although there is not a union here, there certainly could be a formula for determining payment that would be added on for employees who needed or chose to don, doff, and' shower. One suggestion would be adding on to the hourly wage something significantly less than the wage rate for working in the foundry itself. Perhaps something like $10 per hour for the additional 200 minutes per week could be factored in. As noted in Sandifer, “the workers g[o]t more, per hour, in exchange for agreeing to exclude some time from the base.” Id.
The key distinction in this case is that there is no requirement for donning, doffing, or showering. It is totally optional. Many employees take advantage of the convenience of having a clean uniform every day and a shower after work. Others choose to go home without either. Those who choose to go home may not have a particularly dirty job that others in the foundry may have. The punitive consequence in this case is that the time-and-a-half for the donning and doffing overtime goes -back three years from the date of the complaint. No doubt those who chose not to take a shower and change clothes at home may conveniently remember that they did take a shower most of the time. And certainly if this wage rate is imposed with time-and-a-half, all the employees will arrive and don on-site, stay to doff after the shift ends, and take a shower even though it is not required.[5]
As in Sandifer, this kind of imposition of overtime retroactively and prospectively would have a serious economic impact on Waupaca. 678 F.3d at 594-95. If it does not put it out of business outright, it could clearly affect the job availability and would necessarily cause a reduction in wage rates per job. Sandifer, 678 F.3d at 597 (“The higher such costs are, the lower the hourly wage will be. And so the higher costs would be borne ultimately -by the workers.”). This is inevitable because Waupaca has to make a profit and any measure of profit in each division requires a wage that allows fair compensation but also a reasonable profit so that the company can stay in business and perhaps even grow and hire more people.
Finally, it is necessary to emphasize that the district court’s opinion was not a reaction to OSHA’s acquiescence. The plaintiffs place great weight on the recommendations from OSHA with regard to rules about certain chemicals as well as other recommendations for practices in the workplace, The district court simply reacted to those assertions and rejected the insistence that those recommendations inevitably required that the donning and doffing opportunity somehow morphed into a requirement that mandated overtime compensation. Clearly the district court recognized that this was a 24-hour operation with three 8-hour shifts. This means that in order to have a worker present at a work station for the full eight hours for each shift there would be one employee donning and another employee doffing for an additional 40 minutes at time-and-a-half. The district court cor *576 rectly pointed out this is not the case where a judge or a jury should decide on how to run the workplace and how to fix the problem by mandating time-and-a-half overtime. Rather, the only sensible thing is for the employees and Waupaca management to get together and set pay scales where appropriate and in an amount that will be compensable for an 8-hour workday that recognizes the process but does not include the time it takes to don and doff work clothes. The key here is that it is not a requirement and therefore theoretically the company would have the option of just closing down the shower. Maybe that would cause some employees to quit. But paying time-and-a-half for the time it takes to don and doff is not a solution for either the employees or the foundry if the employees want to keep their jobs and the foundry wants to stay in business. Simply put, “[i]f the workers have a legal right to be paid for that time [donning, doffing, and showering], the company will be less willing to pay them a high wage for the time during which they are [working]; it will push hard to reduce the hourly wage so that its overall labor costs do not rise.” Sandifer, 678 F.3d at 594.
In short, I think the district court correctly granted summary judgment to Wau-paca. The complaint in this case was filed well over five years ago. That means that a number of employees have likely departed, including some of those covered within the three-year back pay period. Obviously when this case is sent back to the district court on remand, that three-year back pay period from the filing of the complaint moves forward from the fixed beginning. It is understandable why the district court recognized the futility of going on for more years given the fact that the plaintiffs have already had two chances to come up with new briefs and new discovery. It is obvious the nature of the “work” of donning and doffing is substantially less arduous than the work during the 8-hour shift on the factory floor.
In remanding this case I hope the interests of justice will be served. Our decision in Sandifer fully examines the economic reality of imposing overtime on a 24-hour (three shifts) manufacturing operation. More tedious and expensive discovery and conflicting expert testimony and ultimately a trial should at least be preceded by a careful examination of a formula that factors into a 40-hour wage rate a recognition of the donning and doffing process that sufficiently benefits certain employees without punishing the company. I don’t think any back pay is warranted given the fact that the donning and doffing was not required, and that among the 400 or so employees the non-use or the varying frequency of use of the donning and doffing process would be very difficult to ascertain with each employee or former employee. Perhaps some sort of bonus arrangement could be worked out. That said, I recognize I am the minority and although I would affirm the judgment of the district court, I do accept the court’s decision as the final word.[6]

. My colleagues cite Illinois Power Co. v. OSHA Review Commission, 632 F.2d 25 (7th Cir.1980) for the proposition that we are not permitted to draw an adverse inference on agency silence. Maj. Op. at 570-71. However, the district court did not grant summary judgment based on agency silence, but on the absence of evidence in support of plaintiffs’ claims.

. At oral argument, counsel for Waupaca clarified that HAZCOM is a communication standard, not a conduct standard. In other words, because Waupaca utilizes a variety of chemicals at its foundries, and because OSHA requires that Waupaca make information about those chemicals available to its employees (hence the reason Waupaca retains and makes MSDS data sheets available in the first place), OSHA also requires that the information made available be accurate. But OSHA does not require that MSDS-distributing facilities implement the recommendations found in MSDS data sheets.

.At oral argument, counsel for Waupaca represented that maintenance of the dust referenced in this MSDS is handled by the melt department and melt maintenance department, totaling 52 of the 484 plaintiffs. This "personal hygiene” recommendation is something the company offered as an optional benefit so an employee could clean up and avoid tracking the "no hazard” cupola dust into his or her car or home.

. I use $20 because it is an even number. No doubt many employees are paid less or more per hour.

. That could overcrowd the shower area, causing the company to shut down the whole offer for everyone except those who Waupaca specifically requires to put on special equipment. It is also pretty obvious that the problem in the foundry is not being exposed to dangerous chemicals that may spill on the employee. Rather, the building has dust and perhaps has other irritating particles in the air. A shower at the end of the day is not going to eliminate what could be a respiratory threat.

. Two of our sister circuits have disposed of similar suits brought by individuals employed in similar professions on motions without requiring trial. See, e.g., Franklin v. Kellogg Co., 619 F.3d 604 (6th Cir.2010) (for the time spent walking between the changing room and the time clock, donning and doffing the uniform and equipment was both integral and indispensable to the job ... remanding for fact finding on other issues); Gorman v. *577 Consolidated Edison Corp., 488 F.3d 586, 593 (2d Cir.2007) (donning and doffing is only "integral and indispensable” to a principal activity when the principal activity is performed in a lethal environment). But see Perez v. Mountaire Farms, Inc., 650 F.3d 350, 363 (4th Cir.2011) (donning and doffing protective gear at the beginning and end of the employees work shifts were "integral and indispensable” to chicken processing since these activities were necessary to their work on the "production line” and primarily bene-fitted the employer by sanitizing the employee and its clothing in order to avoid contaminating the chicken).