In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2115

ROCHELL MITCHELL, *et al.*, individually and on behalf of
all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

JCG INDUSTRIES, INC., and KOCH FOODS, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 6847 — **Robert M. Dow, Jr.**, *Judge*.

ARGUED JANUARY 7, 2014 — DECIDED MARCH 18, 2014

Before WOOD, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiffs are employed in a
poultry processing plant in Chicago owned by the defendants, affiliated corporations that we'll call "the employer."
The plaintiffs advance two claims: a claim by the two plaintiffs, suing jointly, that the employer has violated an overtime provision of the Fair Labor Standards Act, 29 U.S.C.

§§ 201 *et seq.*; and a class action claim (supplemental to the federal claim, see 28 U.S.C. § 1367(a)), made by the plaintiffs as the representatives of the class, that the employer's conduct violates an overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* The federal law does not preempt the state law if the latter is more generous to employees, see 29 U.S.C. § 218(a); *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 428–30 (7th Cir. 2010), so even if we decide that the employer has not violated the federal law, we can find that it has violated the state law. The district judge granted summary judgment in favor of the employer on both claims, and having done so dismissed the plaintiffs' motion to certify a class with respect to the state-law claim. One might have expected the employer to press for certification, in order to preclude a further identical suit by others of its employees, see *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820–21 (7th Cir. 2011); but it did not.

The employees in question are line workers represented by a union—Chicago Joint Board, RWDSU (Retail, Wholesale and Department Store Union), http://rwdsu. info/about.htm (visited March 13, 2014, as were the other websites cited in this opinion)—that has a collective bargaining agreement with the employer. The line workers stand next to a conveyor belt and each worker performs various operations on chicken carcasses, such as deboning and evisceration, as each carcass, carried on the moving belt, arrives in front of him or her. For a comprehensive description of the process, see Tony Ashdown, "Poultry Processing," www.ilo.org/safework_bookshelf/english?content&nd=8571 70833; see also Kimberly Kindy, "Fight Picks Up Over Proposal to Speed Poultry-Processing Lines," *Wash. Post*, Feb. 28, 2014, p. A3.

For obvious reasons, "rigid sanitation requirements must be met." Ashdown, *supra*. So before beginning work in the morning the line workers are required to put on a sterilized jacket, plastic apron, cut-resistant gloves, plastic sleeves, earplugs, and a hairnet. They are required to remove this sanitary gear at the start of their half-hour lunch break and put it back on before returning to work. They are also told to wash their hands before eating, but given the nature of poultry processing would doubtless do it without being told to. The principal issue in the case, and the only one presented by the federal claim, is whether the time spent in changing during the lunch break is worktime that must be compensated. It's called "changing," so we'll call it that too, but the term is imprecise. The workers do not change out of their clothes; they place the sanitary gear on top of their street clothes, and remove it.

The time the workers spend changing before and after eating lunch is time taken out of their lunch break rather than out of the four-hour shifts that precede and follow it. It thus leaves them with less time for actually eating. But compression of their eating time is not a concern that motivates the workers' suit; that it is not implies of course that the amount of time consumed in changing is indeed slight, as is further implied by the fact that the plaintiffs don't argue that the meal break is not a bona fide meal break. Were it not bona fide, they would be entitled to be paid for all thirty minutes. Since it's conceded to be bona fide, it is not worktime, 29 C.F.R. § 785.19(a) ("bona fide meal periods are not worktime")—that is, time that the employer is required to compensate employees for even if (as in this case) there is a collective bargaining agreement between the employer and the employees' union and the agreement does not require

such compensation. 29 C.F.R. § 778.223. The plaintiffs argue nevertheless that federal and state law requires that this changing time be compensated—and at 1.5 times the employees' regular wage because it is on top of their 40-hour weekly worktime and thus is overtime—even though the collective bargaining agreement makes the entire meal period noncompensable and the Fair Labor Standards Act does not require that meal periods be compensated.

The Act further excludes from the time during which an employee is entitled to be compensated at the minimum hourly wage (or, if it is overtime work, at 150 percent of the employee's regular hourly wage) "any time spent in changing clothes *at the beginning or end of each workday* which was excluded from measured working time … by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(*o*). The phrase we've italicized is the bone of contention over the applicability of section 203(*o*) to this case. The lunch break does not take place at the beginning or end of the period in which the employees are at the plant, and the plaintiffs contend that only that period is the "workday."

An initial doubt is whether that interpretation can possibly be correct given that many workers work (whether sometimes or only) at night. Nightworkers are called "shift workers" and are estimated to comprise 20 percent of the American workforce. See Sloan Work and Family Research Network, "Questions and Answers About Shift Work," http://workfamily.sas.upenn.edu/sites/workfamily.sas. upenn.edu/files/imported/pdfs/shiftwork.pdf. A busy factory might have three eight-hour shifts, such as 8 a.m. to 4

p.m., 4 p.m. to midnight, and midnight to 8 a.m. These workers have a "workday," but it begins or ends at night (sometimes both). It would be called their "worknight" were there such a word, but because there isn't, "workday" has acquired two meanings: a day on which work is performed, and "the period of time in a day during which work is performed." "Workday," *Merriam-Webster*, www.merriam-webster.com/dictionary/workday. Workers given a half-hour lunch or other meal break from work are in effect working two four-hour workdays in an eight-and-a-half-hour period.

It would make no practical sense to draw the distinction urged by the plaintiffs. An eight-hour workday is standard. If the job requires changing at the beginning and end of the workday, and the time spent changing *has* to be compensated, the eight-hour workday becomes an eight-hour + some-minutes workday and so the employer has to pay overtime. Since changing time isn't working time, a union may decide not to press the employer to pay the workers for that time. That forbearance is likely to be mutually attractive because it avoids the bother of having to keep track of how long the changing takes (and it will differ for each worker) in order to determine what each worker is owed for that time. Hence the optional exemption in section 203(*o*).

If as we believe "workday" includes "worknight," it may also include four-hour shifts separated by meal breaks. It is true that a regulation defines "workday" to mean, "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). But the qualifying phrase "in general" (paraphrased as "generally" in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005)) allows room for an exception; and

there is compelling reason to recognize an exception in this case. (It is noteworthy that section 203(*o*) does not mention meal breaks, hence does not consider the effect they may have on a practical definition of "workday.") The identical considerations attend payment for time changing at the beginning and end of a meal break as at the beginning and end of either a conventional "workday" or the lexicographically challenged "worknight."

Still another reason to interpret "workday" in this manner is that the Fair Labor Standards Act does not require employers to provide meal breaks at all. Whether to provide them is left up to collective bargaining if as in this case the workplace is unionized. And if they are provided, then as long as they're "bona fide," the time they take doesn't have to be compensated. 29 C.F.R. § 785.19. The regulation gives, as an example of a meal break that is not bona fide, when "a factory worker who is required to be at his machine is working while eating." The plaintiffs in this case do not argue that their lunch break is not bona fide.

As the Supreme Court pointed out recently in a related context, "simply put, [section 203(*o*)] provides that the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014). To interpret section 203(*o*) narrowly disserves the interest of workers by narrowing the scope of collective bargaining and, as in this case, setting a group of workers against their union. There are good practical reasons why the union in this case did not negotiate for making the time compensable. To determine how much overtime pay was owed for changing during the lunch break, the employer would have to keep

tabs on how long it takes each employee to change. Unless the employer both fixed a rigid outer limit for time spent changing and monitored compliance with that limit, employees would have an incentive to dawdle at changing in order to increase their wage—which remember is an overtime wage.

These complications would be avoided if time spent during the meal break in actually eating also had to be compensated. For then the employer would know he had to pay every employee one-half hour of overtime wage in addition to eight hours of the employee's regular wage. But we know that meal time does not have to be compensated. On the basis of the regulation cited earlier that excludes bona fide meal periods from worktime for which workers are required to be paid, the Fourth Circuit has held in a case indistinguishable from this one that "the time [employees] spend during their lunch breaks donning and doffing a few items [i.e., changing clothes], washing, and walking to and from the cafeteria … is non-compensable … because it is part of a bona fide meal period, see 29 C.F.R. § 785.19 …, and, in the alternative, *de minimis*." *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 n. 4 (4th Cir. 2009).

*Sepulveda* actually offers two grounds alternative to our interpretation of "workday" for excluding the donning and doffing time in this case from the overtime provision of the Fair Labor Standards Act. We have been assuming thus far that that time is expended at the beginning and end of the (four-hour) workday. But in an equally valid sense it is expended during the lunch break itself. For the exclusion of mealtime from worktime is not exclusion of just the time spent eating—it is the entire "meal period," which we know

is 30 minutes. It is excluded as long as it is bona fide, and, as we said, the plaintiffs don't deny that the lunch break at issue in this case is bona fide. If so, all 30 minutes, including changing time, are excluded from worktime and therefore need not be compensated.

The *Sepulveda* opinion's other alternative ground for affirmance is unrelated to the meaning of "workday" or even of "meal periods." This is the familiar legal doctrine *de minimis non curat lex*—the law doesn't care about trifles (the punchier version is *aquila non capit muscas*—an eagle doesn't catch flies). The doctrine figured in our opinion in *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 593 (7th Cir. 2012), affirmed, 134 S. Ct. 870 (2014). The issue was whether the exemption permitted by section 203(*o*) if agreed to by the parties to a collective bargaining agreement was vitiated by the fact that, in addition to putting on and taking off clothes, the workers had to put on and take off protective equipment, which is not clothing and so is not within the scope of the exemption. Quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), we said that "split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." 678 F.3d at 593.

That remark was consistent with the suggestion in *Hessel v. O'Hearn*, 977 F.2d 299, 304 (7th Cir. 1992), that "the maxim *de minimis non curat lex* is often, perhaps typically, used … to denote types of harm, often but not always trivial, for which the courts do not think a legal remedy should be provided." One reason to withhold a remedy is that the harm is small

but measuring it for purposes of calculating a remedy would be difficult, time-consuming, and uncertain, hence not worthwhile given that smallness. It is inconceivable that "a substantial measure" of the poultry workers' "time and effort" is consumed in changing during the lunch break. The plaintiffs say it takes 10–15 minutes during the lunch break for them to change out of and then into the protective clothing; the company says 2–3 minutes. These time estimates do not include time spent walking to and from the lunch room; the plaintiffs' statement of facts limits the 10–15 minute estimate to the two clothing changes required during the lunch break.

The district judge did not opine on how long the donning and doffing take, a question difficult to answer in the usual way of judicial fact determination. The plaintiffs would testify that it takes 10 to 15 minutes, the employer that it takes only 2 to 3 minutes, and how would a judge or jury know who was telling the truth? The plaintiffs could be filmed changing, but their incentive would be to dawdle; the company could doubtless find a few speed demons among the workers. The limitations of the trial process as a method of finding certain types of fact must be recognized.

One of us decided to experiment with a novel approach. It involved first identifying the clothing/equipment that the defendant's plants use and buying it (it is inexpensive) from the supplier. Upon arrival of the clothing/equipment three members of the court's staff donned/doffed it as they would do if they were workers at the plant. Their endeavors were videotaped. The videotape automatically recorded the time consumed in donning and doffing and also enabled verification that the "workers" were neither rushing nor dawdling.

The videotape reveals that the average time it takes to re-move the clothing/equipment is 15 seconds and the average time to put it on is 95 seconds. The total, 110 seconds, is less than two minutes, even though the "actors" had never worked in a poultry processing plant and were therefore in-experienced donners/doffers of the items in question.

This was not "evidence"—the intention was to satisfy cu-riosity rather than to engage in appellate factfinding—but it is information that confirms the common sense intuition that donning and doffing a few simple pieces of clothing and equipment do not eat up half the lunch break. (If it did, the lunch break might well not be bona fide; but as we said the plaintiffs do not argue that it is not bona fide.) The intuition is compelling; no reasonable jury could find that workers spend half their lunch break taking off and putting on a lab coat, an apron, a hairnet, plastic sleeves, earplugs, and gloves. What a reasonable jury could not find does not create a triable issue of fact.

Regarding the propriety of visual imagery in a judicial opinion, we note the Supreme Court's reference in a footnote in its *Sandifer* opinion to a photograph in our opinion. The Court (which affirmed our decision unanimously) said: "the opinion of the Court of Appeals provides a photograph of a male model wearing the jacket, pants, hardhat, snood, gloves, boots, and glasses. 678 F.3d, at 593." 134 S. Ct. at 874 n. 2. There is no note of disapproval, even though the photo-graph was not in evidence.

Common sense has a place in adjudication. What could be more absurd than to require as a matter of interpretation of the Fair Labor Standards Act that donning and doffing times during lunch breaks be measured daily for each poul-

try worker for purposes of calculating overtime pay (a modest fraction of an hour's wage) due each worker twice every day? For the employer to try to quantify that time, across numerous employees and numerous days of work, other than by statistical sampling methods suggested by neither side in this case, would be an undertaking at once onerous and futile. Nor is having to change inconsistent with the plaintiffs' having been "completely relieved from duty" during their lunch break, 29 C.F.R. § 785.19(a), considering how remote from this simple changing are the "duties" listed in the regulation: "an office employee who is required to eat at his desk or a factory worker who is required to be at his machine."

We are mindful of the Supreme Court's statement in *Sandifer* that "a *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs. Or to put it in the context of the present case, there is no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood. If the statute in question requires courts to select among trifles, *de minimis non curat lex* is not Latin for *close enough for government work*." *Sandifer v. U.S. Steel Corp.*, *supra*, 134 S. Ct. at 880 (emphases in original). But reading on we discover that by another route the Court reached either the same result that we, and likewise the Fourth Circuit in *Sepulveda*, had reached, or a result that allows *greater* latitude for collective bargaining than the *de minimis* doctrine. The Court restated the issue as "whether the period at issue can, *on the whole*, be fairly characterized as 'time spent in chang-

ing clothes or washing.' If an employee devotes the vast majority of the time in question to putting on and off equipment or other non-clothes items (perhaps a diver's suit and tank) the entire period would not qualify as 'time spent in changing clothes' under § 203(*o*), even if some clothes items were donned and doffed as well. But if the vast majority of the time is spent in donning and doffing 'clothes' … the entire period qualifies, and the time spent putting on and off other items need not be subtracted." *Id.* at 881 (emphasis in original). The poultry workers in our case do not spend the "vast majority of the time" during their lunch breaks donning and doffing.

The Supreme Court said that it "agree[d] with the basic perception of the Courts of Appeals [which is to say, the Fourth and Seventh Circuits] that it is most unlikely Congress meant § 203(*o*) to convert federal judges into time-study professionals. That is especially so since the consequence of dispensing with the intricate exercise of separating the minutes spent changing clothes from the minutes devoted to other activities is not to prevent compensation for the uncovered segments, but merely to leave the issue of compensation to the process of collective bargaining. We think it is possible to give the text of § 203(*o*) a meaning that avoids such relatively inconsequential judicial involvement in 'a morass of difficult, fact-specific determinations,' *Sepulveda*, 591 F.3d, at 218. … In the present case, the District Court stated that 'the time expended by each employee donning and doffing' safety glasses and earplugs 'is minimal,' … a conclusion with which the Seventh Circuit agreed." 134 S. Ct. at 881. And the Supreme Court affirmed. (Notice the Court's favorable citation of *Sepulveda*, a decision on which we rely in this case.)

The Latin word "*minimis*" means "minimal things," but the usual legal translation of "*de minimis non curat lex*" is that the law doesn't concern itself with "trifles." The word "minimal" is less dismissive, and notice that the Court in the passage we just quoted speaks of avoiding "relatively inconsequential judicial involvement in 'a morass of difficult, fact-specific determinations.'" That is an exact description of a court's determining the changing time spent by the different poultry workers on different days, rather than leaving it to the union to decide to negotiate in lieu of the monitoring and incessant disagreement that such a measurement process would require to implement an alternative form of compensation. No way the workers would come out ahead by prevailing in this class action suit.

We turn now to the claim based on Illinois's minimum wage statute. That statute fixes a minimum hourly wage and requires overtime pay for employees who have "a workweek of more than 40 hours." 820 ILCS 105/4(a)(1), 4a(1). The statute doesn't say "hour" or "hours" of what, and contains no counterpart to section 203(*o*) of the federal law. But it authorizes the Director of the Illinois Department of Labor to make administrative regulations "including definitions of terms, as he deems appropriate to carry out the purposes of" the minimum wage law. 820 ILCS 105/10(a). Pursuant to this authorization the Director in 1984 promulgated a regulation which states that "'hours worked' means all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110. That's broad, and standing alone would encompass time spent changing during a meal break, because that can be done only on the em-

ployer's premises. But there is more to the regulation. A 1995 addition states that "an employee's meal periods … are compensable hours worked when such time is spent predominantly for the benefit of the employer, rather than for the employee." The first part of section 210.110 that we quoted is worded almost identically to the "hours worked" federal regulation, 29 C.F.R. § 778.223; the second part parallels the other federal regulation that we cited, 29 C.F.R. § 785.19(a), by taking bona fide meal time out of worktime. The single Illinois regulation covers the same ground as the two federal regulations, though with a useful clarification, as we're about to see.

The employees in this case can leave the plant during their lunch break and grab a bite at a nearby restaurant, but they have to be on the employer's premises when changing. It doesn't follow that the time taken for the meal break is predominantly for the employer's benefit rather than the employee's. Cf. *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996). On the contrary, the employer does not provide a meal break so that the employees can don and doff protective clothes and equipment, but so that they don't have to work eight hours straight without food. The meal break is for the employees' benefit. The clothes changing is incidental to their eating lunch.

The predominance test is related to the *de minimis* doctrine, but it is part of the regulation rather than a common law add-on (*de minimis non curat lex* is a common law doctrine, both state and federal). But the common law add-on is part of Illinois labor law as well. In *Porter v. Kraft Foods Global, Inc.*, 2012 WL 7051311, at *9 (Ill. App. Dec. 10, 2012), the Illinois Appellate Court, relying on our *Sandifer* opinion, ap-

plied the *de minimis* doctrine to the small amounts of time that workers in *Porter* took to don and doff protective equipment at the beginning and end of their workday. There is no mention in the opinion of a collective bargaining agreement between the parties. Remember that section 203(*o*) of the federal Act allows certain on-premises time to be exempted from the Act's minimum wage and overtime provisions only if a collective bargaining agreement so provides—and section 203(*o*) doesn't have a counterpart in the Illinois law. But to dwell on these differences is to miss the *independent* force of the *de minimis* doctrine (or the alternative preferred by the Supreme Court—"minimal"—not that its preference would bind the Illinois courts or regulators when dealing with an Illinois statute or regulation).

It was not argued in *Sandifer* that the *clothes-changing* time involved in that case was *de minimis*. The exclusion of that time from hours worked was based on a provision of the collective bargaining agreement authorized by section 203(*o*) of the Fair Labor Standards Act. The argument, which carried the day, was that the protective equipment that the workers had to put on and take off *in addition* to putting on and taking off their work clothes was *de minimis*. There is similarly no argument in this case that the meal breaks are *de minimis*; under both the state and federal statutes they are not work time at all, just as the clothes-changing time in *Sandifer* was, by virtue of the collective bargaining agreement and section 203(*o*), not work time. The question under Illinois law is whether the time spent *during* the half-hour meal break in changing clothes, corresponding to putting on and taking off the protective equipment in *Sandifer*, is *de minimis*.

Remember that what the parties call changing clothes in this case is not dressing and undressing—that is, changing from street clothes into work clothes and upon ending work changing back again—but rather is placing several items of protective clothing or equipment on top of the employee's street clothes (or in or on his person rather than on his street clothes, in the case of the earplugs and hairnet) and later removing them. If these actions took a big chunk of time, leaving inadequate time for eating without getting indigestion, the meal break would no longer be bona fide. But that is not argued. For us to rule that a few minutes of changing time must be compensated would put us in the role that the Supreme Court derided—that of playing at being "time-study professionals." The pertinence of "practical administrative difficulties" in calculating the duration of an activity "for payroll purposes" was noted by the Illinois Appellate Court in *Bartoszewski v. Village of Fox Lake*, 647 N.E.2d 591, 596 (Ill. App. 1995), a case that, incidentally, characterized "the Federal case law" as "instructive" in interpreting the Illinois law. *Id*. at 594.

Never to our knowledge has either the Director's regulation been held to require compensation for changing time at the beginning and end of meal breaks, or the provision in a collective bargaining agreement excluding meal breaks from compensable time been challenged. The absence of any enforcement of the interpretation advocated by the plaintiffs in this case is telling evidence of how the Illinois law is understood by Illinois judges, lawyers, and labor officials. The *Porter* decision signals that the *de minimis* rule is alive and well in Illinois's law of employee compensation, and the rule is amplified by the predominance test in the regulation. And there is nothing to suggest that the Illinois Appellate Court

in *Porter* thought it was creating new law. We would expect that had it thought that, it would have published its opinion. And we have no reason to think that the state's highest court would disagree with *Porter*—it denied Porter's petition to appeal the Illinois Appellate Court's decision to it. 985 N.E.2d 310 (2013) (per curiam).

There is a benefit, in simplified labor relations, from a degree of convergence of federal and state law in regard to the scope of exemptions from mandatory provisions of those different bodies of law when both are applicable to the same workforce, as they are in many cases—in this case, for example. As we noted in *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014), Illinois courts frequently say that they look to the Fair Labor Standards Act for guidance in interpreting the state's minimum wage law. Besides the Illinois cases cited in *id.*, see, e.g., *Lewis v. Giordano's Enterprises, Inc.*, 921 N.E.2d 740, 745–46 (Ill. App. 2009), and *Bernardi v. Village of North Pekin*, 482 N.E.2d 101, 102 (Ill. App. 1985). The Illinois Department of Labor has said that too. See 56 Ill. Admin. Code § 210.120. Earlier we noted the similarity of the federal and state regulations pertinent to this case.

So far in this opinion we have been discussing just changing time during meal breaks. That is the primary focus of the appeal. But the plaintiffs also argue, though only with respect to their claim under Illinois law, that not only should that time be compensated but likewise the time the workers take to don and doff at the beginning of the morning shift and end of the afternoon shift. But if as we have just ruled the time spent on the identical activity during meal breaks is *de minimis* (or "minimal" in the Supreme Court's preferred term), it is even more clearly so when performed at the be-

ginning and end of the workers' day of work. The amount of time spent on the activity is the same but obviously is a much larger fraction of a 30-minute lunch break than of 8 hours (480 minutes) of work time (16 times larger). If it is *de minimis* in the first case, it is *de minimis a fortiori* in the second.

We end this longish opinion with a reminder that the cause of amicable labor-management relations is impaired by reading broadly statutes and regulations that remove wage and hour issues from the scope of collective bargaining. That is what motivated Congress to amend the Fair Labor Standards Act in 1947 to add (among other provisions) what is now section 203(*o*), stating in 29 U.S.C. § 251 that "Congress finds that the Fair Labor Standards Act of 1938 … has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." Employer and union in this case have agreed not to count the tiny donning/doffing times as compensated work. Doubtless the union required compensation for that concession to the employer. The plaintiffs in this case are trying to upend the deal struck by their own union.

AFFIRMED.

WOOD, *Chief Judge*, dissenting. This case requires us to re-
turn to the topic of "donning and doffing" clothing and
equipment for purposes of performing a job—and in particu-
lar, to the question whether the time spent in those quaintly-
termed activities must be included as work-time for purpos-
es of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et
seq.* The plaintiffs in our case work at a poultry processing
plant. Before they may begin their work, which involves
evisceration, deboning, and cleaning of the carcasses, plain-
tiffs must "don" certain outerwear and protective gear. In
the middle of the day, at lunchtime, they remove the sanitary
gear and wash up. At the end of the lunch break, they suit
up again, and at the end of their shift they remove the gear
for good, wash up again, and head home. Plaintiffs argue
that under both the FLSA and the Illinois Minimum Wage
Law, 820 ILCS 105/1 *et seq.*, they are entitled to be compen-
sated for the time they spend putting on and taking off this
gear, plus the associated washing-up time.

The majority asserts that cleaning up is not part of the
employee's "work," but I see no justification for this holding.
Section 203(*o*) refers explicitly to washing; and the employer
cannot permit people who work with raw meat to enter the
lunchroom without thoroughly washing up. For example,
Facility Guidelines for Meat Processing Plants issued by the
U.S. Department of Agriculture specifically identify hand-
wash sinks as "one of the most important steps" for proper
sanitation that must be taken in such a plant. See 62 Fed.
Reg. 45,028, 45,030 (Aug. 25, 1997), available at
www.ncagr.gov/meatpoultry/pdf/Facility%20Guidelines.pdf,
(last visited Mar. 16, 2014). Indeed, the Centers for Disease
Control and Prevention warn people who keep live poultry
in their backyards to wash their hands any time they touch a

bird. See *Keeping Backyard Poultry*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/features/salmonellapoultry/, (last visited Mar. 13, 2014). There is nothing voluntary about the washing process during the middle of the day.

My colleagues reject both of the employees' claims. They do so by rejecting the long-established "continuous workday" principle that has always governed the FLSA and by resolving disputed facts over the amount of time the donning, doffing, and washing process takes in this particular case. In my view, they have erred as a matter of law, and they have gone beyond the proper appellate role. I therefore dissent.

I begin with the legal framework established by the FLSA, and then I turn to the way I believe it should apply to this workplace. I conclude with a word about the state-law claim.

**I**

The critical section of the FLSA for present purposes is 29 U.S.C. § 203(*o*), which was added to the statute in 1947 by the Portal-to-Portal Act, 61 Stat. 84. For convenience, I reproduce it here:

> **(o)** Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom

or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

Because section 203(*o*) permits employers and unions to bargain only over the compensation for time spent changing clothes "at the beginning or end of each workday," see, *e.g.*, *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880–81 (2014), the first question on the table is what the word "workday" means in this context.

This is not a question of first impression for the federal courts. In fact, even though the term "workday" is not defined in the statute, the Department of Labor has defined it in a long-standing regulation, as follows:

> (b) "Workday" as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period. For example, a rest period or a lunch period is part of the "workday," and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked. If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance

> with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday, and section 4 of the Portal Act would not affect its inclusion in hours worked for purposes of the Fair Labor Standards Act.

29 C.F.R. § 790.6(b).

The suggestion that one eight-hour workday can be divided into two four-hour "days" (or maybe four two-hour "days," if rest breaks are considered) is incompatible with this authoritative definition. The reference in the first sentence of the regulation to "commencement" and "completion" of tasks within one day can mean only that lunch breaks and rest breaks occur within those outer boundaries (as the third sentence explicitly says). Nothing in 29 C.F.R. § 790.6(b) leaves room for the possibility that one might break an eight-hour workday into partial "days" of four hours each (or perhaps even smaller units). It is true that the regulation says that "in general" a workday extends from the commencement to the completion of the employee's tasks. The majority argues that this qualification is triggered here, when they assert that "there is compelling reason to recognize an exception [to the eight-hour continuous day] in this case." *Ante* at 6. I see no reason at all to do so, compelling or otherwise. Indeed, I cannot imagine a workplace that could not operate under two four-hour "days" rather than one continuous eight-hour day. In effect, the majority has held that this regulation is incompatible with the statute. It

does so without going through any of the normal analysis that would justify disregard of an administrative agency's longstanding interpretation of a law that it is charged to implement. I do not see it that way. Because I find nothing unusual about the poultry processing facilities here, I would hold that section 790.6(b) requires us to find that the "workday" here extends from the time the employee reports to work until the time he is free to clock out for the day. Various breaks that may or may not be compensable time occur within those outer boundaries. Because section 203(*o*) permits employers and unions to bargain over the compensability of time spent changing clothes only "at the beginning or end of each workday," the most straightforward reading of the statute shows that donning, doffing, and cleaning that occurs in the middle of the workday is not within the ambit of section 203(*o*)'s exclusion.

The majority's argument for avoiding section 203(*o*)'s plain language by breaking a single eight-hour workday into two four-hour days calls into question the applicability of the continuous workday doctrine across the board. Yet the Supreme Court accepted that doctrine in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005). Workers must be compensated for time spent doing what might otherwise be non-compensable activities under the Portal-to-Portal Act if those activities occur between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday and are not otherwise exempt (*i.e.* for a *bona fide* lunch break). 29 C.F.R. § 790.6(a).

Under the majority's interpretation, an employer that requires an employee to walk, midday, from one principal work activity to another (perhaps from the sewing room to

the steaming room) would be able to render that otherwise compensable time non-compensable by telling the employee that one "workday" ended when he left the sewing room, and a new "workday" started when he entered the steaming room. Such a rule would effectively eliminate the continuous workday concept. I freely accept that Congress could amend section 203(*o*) tomorrow to reject the continuous workday notion, but it has not done so yet. For FLSA purposes, I agree with the majority only insofar as it holds that the parties are free to bargain about the coverage of donning, doffing, and washing time at the beginning and the end of the full workday.

Looking at the language of section 203(*o*), and taking into account the definition of "workday" found at 29 C.F.R. § 790.6(b), I would find that the workers are entitled to be paid for time spent donning, doffing, and washing up at any time after they first start working and before they finish their last task of the day. They are thus, in my view, presumptively entitled to be compensated for their lunch break donning, doffing, and cleaning. (I address the possible exception for *de minimis* activities below.) Because section 203(*o*) permits employers and unions to bargain only over the compensability of time spent changing clothes "at the beginning or end of each workday," they cannot bargain away worker compensation for mid-day breaks, whether at lunchtime or at other times. This may help the workers, as plaintiffs here believe, or it may ultimately reduce their power at the bargaining table, because it gives them one less chip to play, as my colleagues predict. But this is the system that the FLSA creates, and the workers are entitled to enforce their rights under existing law.

## II

My second objection to the majority's opinion focuses on its alternative holding, namely, that even if section 203(*o*)'s exclusion does not apply to mealtime donning and doffing, the time spent engaged in those activities in this case is *de minimis* and thus non-compensable at the threshold. This position brushes past serious disputes of fact about how the donning, doffing, and washing actually take place in this workplace. I am startled, to say the least, to think that an appellate court would resolve such a dispute based on a post-argument experiment conducted in chambers by a judge. *Ante* at 9–10. As the majority concedes, this cannot be considered as evidence in the case. To the extent (even slight) that the court is relying on this experiment to resolve a disputed issue of fact, I believe that it has strayed beyond the boundaries established by Federal Rule of Civil Procedure 56. (This is quite different, it seems to me, from including an illustrative photograph whose accuracy presumably could not be contested.) I note as well that this experiment proceeded on the assumption that washing is not essential for workers handling raw poultry—an assumption I have already shown to be inconsistent with government regulations for hygiene within a meat processing plant. Finally, there are two other problems with the majority's approach: it runs afoul of the statutory definition of a *bona fide* lunch break, and it fails to give effect to the Supreme Court's recent rejection of *de minimis* analysis in the donning and doffing context.

The record here leaves no doubt that the parties do not agree on the central question of the amount of time it takes at these workplaces to don and doff the required clothing

and equipment and to wash up. The plaintiffs allege that it typically takes workers from 10 to 15 minutes to don their equipment at the beginning of the workday. They further contend that the sanitary equipment must be put on and removed in an area isolated from the production floor, in order to protect the raw poultry from contamination. The need to go to the approved area adds to the time required to complete the donning and doffing activities. The employer paints a much different picture—one that the majority has decided to credit, despite the fact that this case reaches us on an appeal from a grant of summary judgment. The employer estimates that everything can be accomplished in one or two minutes.

This is as material a dispute of fact as I can imagine, and thus one that should have prevented disposition on summary judgment. See FED. R. CIV. P. 56(a). And it is a factual issue about which the employees have personal experience; no one can complain that their affidavits about the time these activities require lack proper foundation. In order to choose between the employees' and the employer's estimates of the necessary time, one needs to know additional facts about what exactly the employer requires the workers to do. If, as plaintiffs allege, the necessary doffing before lunchtime and at the end of the day includes not merely removing the equipment, but also washing and stowing the tools and equipment, then it is easy to see how more time might be necessary than would be needed for a simple change of clothes. The Centers for Disease Control states that "it is not unusual for raw poultry from any producer to have *Salmonella* bacteria." *Salmonella and Chicken: What You Should Know and What You Can Do*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http: // www . cdc . gov/ features/ salmonella-

chicken/ (last visited Mar. 16, 2014). *Salmonella,* it adds, is "an important cause of human illness in the United States and often linked to poultry"; some of that *Salmonella* is a multi-drug-resistant strain. *Id.* It is essential for the health of the worker, her fellow workers, and the consumers who will consume the poultry products that a person who has been steeped in raw poultry viscera for hours wash herself off before eating. (For a chilling account of what can happen when proper sanitation standards in a comparable industry (turkey processing) are not followed, see Dan Barry, *The 'Boys' in the Bunkhouse,* N.Y. TIMES MAG., Mar. 9, 2014, available at http://www.nytimes.com/interactive/2014/03/09/us/the-boys-in-the-bunkhouse.html (last visited Mar. 16, 2014).) In short, the amount of time at issue is a question that must be developed at trial; no amount of common sense, internet research, or personal experience can substitute for that.

Second, as I have noted, the continuous workday doctrine provides that workers must be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur between the commencement of the worker's first principal activity and the completion of her last principal activity on any workday. See 29 C.F.R. § 790.6(a). For example, "[r]est periods of short duration, running from 5 minutes to about 20 minutes, … must be counted as hours worked." 29 C.F.R. § 785.18. In contrast to a rest period, a *bona fide* lunch period does not count as "hours worked" and thus an employer does not have to pay workers for that time. This makes the distinction between a rest period of "short duration" and a *bona fide* lunch period crucial. In order to qualify as a *bona fide* meal period, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R.

§ 785.19(a). The regulation recognizes that "ordinarily" 30 minutes or more is long enough for a *bona fide* meal period. If, however, workers are required to walk to a donning and doffing area, take off their outerwear and equipment, and wash off raw chicken and blood; then go eat lunch; and then return to the designated area, and suit up again, all during their 30-minute "meal break," then those workers obviously do not have a full 30 minutes in which to get their lunch and eat.

If the meal break is actually shorter than 30 minutes, the employer risks a finding that it has not provided a *bona fide* meal period at all, for purposes of 29 C.F.R. § 785.19(a). That would render the entire break period compensable, pursuant to 29 C.F.R. § 785.18. Granted, a period shorter than 30 minutes "may be long enough under special conditions," but the statute does not specify what those special circumstances might be. This, too, is a matter that can be resolved only with a more complete factual record.

As I read the Supreme Court's decision in *Sandifer*, this court is not entitled to dismiss lunchtime washing, donning, and doffing of clothing as "*de minimis.*" See 134 S. Ct. at 880 ("We doubt that the *de minimis* doctrine can properly be applied to the present case. … *[D]e minimis non curat lex* is not Latin for *close enough for government work.*") As the Court recognized, § 203(*o*) is "*all about* trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." *Id.* at 880. *Sandifer*'s rejection of the *de minimis* doctrine in this context established an important point: while putting on clothes and washing may take very little time, courts should recognize that § 203(*o*) was designed to treat that time specially if it oc-

curred at the beginning or end of the workday—that is, there is a default rule that classifies it as time required for the job, but the parties are permitted to vary that rule to make it noncompensable under a collective bargaining agreement. If the same activities occur in the middle of the day, the default rule stands and no such exemption is permitted.

The Court's rejection of the *de minimis* concept in the clothing and washing context sheds light on the test the Court did adopt, in an effort to spare federal judges from becoming "time-study professionals." *Id.* at 880. The pertinent question, the Court held, "is whether the period at issue can, *on the whole,* be fairly characterized as 'time spent in changing clothes or washing.'" *Id.* at 880. The importance of the conclusion is more nuanced than my colleagues imply, however. If one is talking about the beginning or end of the workday, whether the period meets the "on the whole" test changes only whether employers and unions can bargain about the extra minutes; it does not make the period categorically non-compensable. Either the time is "on the whole" spent changing clothes or washing, in which case unions can bargain away compensation for that time, or the time "on the whole" is spent otherwise, in which case § 203(*o*) does not apply and the right to compensation for that time rises or falls based on other criteria.

Even if the idea of a time "as a whole" is functionally equivalent to *de minimis* analysis (and I have a hard time coming to that conclusion in light of the Supreme Court's discussion), I am troubled by the majority's assumption that the amounts of time spent here fall below that threshold. We should not evaluate each day, or part of a day, separately. Instead, we should aggregate the amount of time the workers

spend donning, doffing, and cleaning—time that otherwise would be compensable. Accord *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 373 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1634, (2012) ("In applying the *de minimis* rule, we consider the aggregate amount of time for which the employees are otherwise legally entitled to compensation") (citing DOL Wage & Adv. Mem. No. 2006-2 n.1 (May 31, 2006)). If, for example, it takes an average employee four minutes at the beginning of the lunch break to remove the special gear and to wash up, and then two minutes at the end of the break to suit up again, that amounts to six minutes (or 0.1 hour) out of the 30-minute break (that is, 20% of the break). (Note that my example does not come close to assuming that these activities will consume 15 minutes out of a 30-minute lunch break. See *ante* at 10. But they do take up real time.) Multiply this by the five days in an ordinary work-week and one has a half-hour of time at stake. I cannot dismiss this as inconsequential, given the realities that face most people whose jobs put them within the group protected by the FLSA. I also see nothing in the statute that would prevent the employer from crediting employees with a reasonable time for these activities. There is no more reason to assume that each employee's donning and doffing time would need to be measured individually on a daily basis than there is to think that any other donning and doffing time must be handled that way. The use of an average period would eliminate any benefit from dawdling. It would be easy enough for an employer to specify that the required time on the floor of the plant ends three or four minutes before the lunch break, and starts up again when the employee begins to re-don his gear, if the employer wanted to avoid any overtime liability.

I would find that these employees have the right in principle to compensation for their donning, doffing, and cleaning time during their workday (and in particular before and after lunch), and I would remand for trial to determine how much time these activities actually consume. Given the limitations of the FLSA, I would affirm to the extent that the employees pursue a federal right to exclude donning and doffing at the beginning and end of the workday, because section 203(*o*) permits the parties to make that a subject of collective bargaining.

### III

Last, I turn to the Illinois Minimum Wage Act. As the *amicus curiae* brief filed by the State of Illinois stresses, Illinois has adopted a broader approach than the FLSA to the definition of "hours worked." The Illinois Minimum Wage Act has been interpreted authoritatively by the Illinois Department of Labor to require compensation for "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." Ill. Admin. Code, tit. 56, § 210.110. This definition is quite similar to the one the U.S. Supreme Court endorsed in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). There the Supreme Court defined the "statutory workweek" to "include[] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 328 U.S. at 690-91 (1946). While Congress found the Supreme Court's interpretation too broad, and so amended the FLSA in 1947 to create certain exceptions, the Illinois state regime has never abandoned that rule. If the FLSA preempted contrary state laws,

the fact that Illinois has chosen a different rule might be of no importance. But, to the contrary, the FLSA includes a savings clause that gives precedence to state laws with more generous compensation schemes. 29 U.S.C. § 218(a); see *Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427, 428–30 (7th Cir. 2010).

The result my colleagues have reached cannot be squared with the plain language of the Illinois law. In direct contradiction to the views of the Illinois Attorney General, they have found that Illinois law must be read the same way as the federal law. The savings clause, however, tells us that Congress has not required this result, and the Illinois Department of Labor has made it clear that it has not chosen to follow federal law in this respect. This matter is of sufficiently great importance to the state that the Attorney General has asked this court to certify the question to the Supreme Court of Illinois, if we were to find any doubt about the matter. Rather than resolve this issue, I would grant the Attorney General's request. The question is an important one for both employers and workers in the state, and it thus stands a good chance of meeting the certification requirements set out in Ill. Sup. Ct. R. 20. I would thus submit a proper request to that court under Seventh Circuit Local Rule 52.

*******************

In conclusion, I respectfully dissent from the majority's decision to affirm the judgment of the district court. As I read the Illinois Minimum Wage Act, plaintiffs are entitled to compensation for their donning, doffing, and washing time both at the beginning and end of the workday and during their lunch break. The FLSA independently protects their right to compensation for the lunch-break time. I would re-

mand this case for fact-finding on exactly how much time this is.